**JOY MINING MACHINERY,**
**Petitioner,**

**v.**

**WORKERS' COMPENSATION**
**APPEAL BOARD (NOGGLE),**
**Respondent.**

**Joy Mining Machinery, Petitioner,**

**v.**

**Workers' Compensation Appeal Board**
**(Shoemaker), Respondent.**

**Joy Mining Machinery, Petitioner,**

**v.**

**Workers' Compensation Appeal Board**
**(Morrow), Respondent.**

**Joy Mining Machinery, Petitioner,**

**v.**

**Workers' Compensation Appeal Board**
**(Gilara), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 2002.

Decided Aug. 28, 2002.

Harry J. Klucher, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondents.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Judge.

OPINION BY President Judge COLINS.

Joy Mining Machinery (Joy Mining or Employer) petitions for review of the orders of the Workers' Compensation Appeal Board affirming the award of hearing loss benefits to four individual claimants, Edward Noggle, George Shoemaker, Boyd Morrow, and Victor Gilara. These appeals have been consolidated for review. Also before the Court is respondents' motion for assessment of counsel fees.

The claimants filed their individual claim petitions in 1998, and all four were assigned to a single workers' compensation judge who held separate hearings for each case. Each claim petition alleged bilateral hearing loss caused by long and continuous noise exposure in the workplace; Joy Mining denied all material allegations and asserted the affirmative defense that the claimants were not exposed to hazardous occupational noise.

In each case, the claimant and several coworkers testified as to the claimant's plant assignment and job classification, the types of machinery in and around the work area, and the noise levels in the work area. Joy Mining offered the expert testimony of Kirk Eidenmuller and Douglas Callen, who conducted sound level surveys in its plants in April 1993 and February 1996. It also offered the testimony of Paul Winkler, its director of environmental health and safety, and Vickie Weber, a plant nurse at Joy Mining. To rebut the sound level studies and expert testimony, the claimants each offered the testimony of coworkers to establish that the sound level studies were

not representative of the noise levels typically present in the plant. These witnesses essentially testified that the testing was done at times when some processes were not being performed or when some machines were not operating, and that supervisors directed workers to reduce noise by operating fewer machines when the testing was being undertaken. The claimants presented the medical report of Dr. Michael Bell to establish the extent of their hearing loss. The employer offered the medical deposition testimony of either Dr. Moises Arriaga or Dr. Douglas Chen.

In each case, the judge awarded hearing loss benefits after crediting the testimony of the claimants, Dr. Bell, and the coworkers who testified about the conditions under which the 1993 and 1996 sound level testing was conducted. The judge discredited the testimony of Dr. Arriaga and Dr. Chen, and that of Eidenmuller and Callen. Although the judge accepted the numerical results of the sound level surveys that formed the basis of the Eidenmuller and Callen testimony, he concluded that the results were not representative of the typical noise levels for the work areas tested. The judge concluded that the employer failed to establish its affirmative defense. The Board affirmed.

On appeal to Commonwealth Court, Joy Mining makes the following arguments: 1) that the judge erred and capriciously disregarded competent evidence when he accepted the numerical results of the sound level surveys, but rejected the expert testimony based on those numerical results, and concluded that the Employer failed to prove its affirmative defense; 2) that the judge's findings as to the claimants' noise level exposures were not supported by the requisite evidence in that the judge misapplied the results of the sound surveys; 3) that the judge erred in rejecting its medical expert evidence; 4) that the claimants failed to establish the requisite medical causation; and 5) that the claim petitions were not timely in that the claimants were not exposed to hazardous occupational noise within the last three years.

■ In workers' compensation cases, our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether constitutional rights have been violated or errors of law have been committed. 2 Pa.C.S. § 704. Our function is not to reweigh evidence or to substitute our judgment for the judgment of the judge. *Vitelli v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Company)*, 157 Pa.Cmwlth.589, 630 A.2d 923 (1993), *petition for allowance of appeal denied*, 537 Pa. 627, 641 A.2d 591 (1994). If the credited evidence constitutes substantial evidence, the judge's findings will not be disturbed even though there may be evidence to the contrary. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board*, 31 Pa. Cmwlth. 590, 377 A.2d 1007 (1977).

■ Section 306(c)(8)(x) of the Workers' Compensation Act (Act)[1] states, "Whether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim." "Hazardous occupational noise" is defined in terms of the permissible noise exposure set forth in table G–16 of OSHA Occupational Noise Exposure Standards, 29 C.F.R. § 1910.95, or 90 dBA for an eight-hour day.[2] "Long-term exposure" is noise exceeding the permissible daily exposure for at least three

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8)(x).

2. Section 105.4 of the Act, 77 P.S. § 25.4, added by Section 1 of the Act of February 23, 1995, P.L. 1.

days each week for forty weeks in one year. Section 105.6 of the Act, 77 P.S. § 25.6.[3] Incorporating those definitions, we have stated that for an employer to prove its affirmative defense, it must establish either 1) that the claimant was not exposed to sound levels equal to or in excess of 90 dBA during the alleged period of exposure to long-term hazardous noise; or 2) that such exposure did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year for which exposure to long-term hazardous exposure is claimed. *General Electric Company v. Workers' Compensation Appeal Board (Rizzo)*, 737 A.2d 852 (Pa.Cmwlth.1999). Whether the claimant was exposed to hazardous occupational noise is a question of fact to be found by the judge. *Id.*

In support of its affirmative defense, Joy Mining presented the testimony of Eidenmuller and Callen, who performed sound level surveys in 1993 an 1996, and the testimony of Vickie Weber and Paul Winkler. The judge rejected the testimony of Eidenmuller and Callen as not credible and not convincing to establish the absence of hazardous occupational noise exposure. He credited the testimony of Weber and Winkler, but found their testimony to be evidence that noise levels are above 90 dBA in areas of Joy Mining's plants in that hearing protection devices were mandated.

Although the judge accepted the numerical results of the 1993 and 1996 sound surveys, he noted that in both surveys, no employee wore a dosimeter for eight hours and that sound level readings were not taken using a hand-held device in any work area for any substantial length of time. In rejecting Eidenmuller and Callen's testimony the judge explained,

> The approach taken by Mr. Eidenmuller and Dr. Callen appears to be adequate to satisfy OSHA's requirements under 29 CFR § 1910.95 for establishing areas within a plant where certain steps *must* be taken by employers in order to protect employees; however, as pointed out in appendix G, "Area monitoring can be used to estimate noise exposure when the noise levels are relatively constant and employees are not mobile ... in work places where employees move about in different areas or where the noise intensity tends to fluctuate over time, noise exposure is generally more accurately estimated by the personal monitoring approach ... with a dosimeter, the microphone is generally located on the shoulder and remains in that position for the entire workday ... with a sound level meter, the microphone is stationed near the employee's head, and the instrument is · usually held by an individual who follows the employee as he or she moves about." The actual readings taken by these experts confirm that the noise produced by chipping, grinding, hammering, dumping metals and torching can and does exceed 90 decibels. I do not believe the testimony from these two (2) expert witnesses [Eidenmuller and Callen] to the effect that the Claimant would not in fact be exposed to noise at the 90 decibel level on a time-weighted average.

(Finding of Fact No. 26, Claim 789030, Edward Noggle.)[4] The judge's finding finds additional support in the OSHA regulation found at 29 C.F.R. § 1910.95(d)(ii), which states,

> Where circumstances such as high worker mobility, significant variations in sound level, or a significant component of impulse noise make area monitoring generally inappropriate, the employer shall use representative personal sampling to comply with the monitoring re-

---

3. Added by Section 1 of the Act of February 23, 1995, P.L. 1.

4. The judge made similar findings in each of the other three cases.

quirements of this paragraph unless the employer can show that area sampling produces equivalent results.

■ Given the judge's rejection of the testimony of Eidenmuller and Callen, Joy Mining produced no credited evidence to establish that the claimants were not exposed to sound levels equal to or in excess of 90 dBA. Similarly, the employer failed to produce credited evidence that the claimants' exposure did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year while they were exposed to hazardous occupational noise. Contrary to the Employer's argument, the judge need not have made findings as to the exact noise levels to which each individual claimant was exposed. Because the Act imposes no burden on the claimant to prove that occupational noise is hazardous or long term, and the Employer failed to prove that the claimants were not exposed to hazardous occupational noise, such findings are not necessary to the judge's decision and any error in the judge's extrapolation of the actual noise levels in the claimants' work areas is of no consequence.

■ Joy Mining's argument that the judge erred in rejecting the opinions of its medical experts is nothing more than a challenge to the judge's credibility determinations, and we will not address it. Joy Mining also argues that the medical evidence submitted by two of the claimants, Morrow and Shoemaker, does not establish that their hearing loss was caused by occupational noise exposure because Dr. Bell's medical opinions were based on incorrect factual foundations. It argues that Dr. Bell's opinions are not competent because

he was not aware of the claimants' specific work activities or their non-work activities that could have contributed to their hearing loss (e.g., use of power tools, hunting). We disagree.

In the case of these two claimants, the claim was for less than 52 weeks of benefits and the Employer agreed to the submission of a medical report rather than a deposition. The fact that Dr. Bell's report may not have stated his awareness of every facet of the claimant's history does not mean that he was not aware of activities other than work that could have contributed to the claimant's hearing loss. Furthermore, the Employer could have deposed Dr. Bell and cross-examined him on any perceived inconsistencies in the claimants' histories and non-work-related factors that might have contributed to their hearing loss. Because it did not, it cannot now argue that such inconsistencies render Dr. Bell's medical opinions incompetent.

Finally, Joy Mining argues that the claimants failed to file their claims within three years after their last exposure to hazardous occupational noise.[5] Because the claimants filed their claim petitions in 1998, the Employer argues, they would have had to be exposed to hazardous occupational noise after 1995. The Employer premises this argument on the contention that it proved that none of the claimants was exposed to hazardous occupational noise after 1995. This argument fails, because as explained above, the judge correctly determined that the Employer failed to meet the burden of proving its affirmative defense.

Accordingly, the orders of the Board are affirmed.

---

5. A claim for occupational hearing loss must be brought within three years after the date of last exposure to hazardous occupational noise. Section 306(c)(8)(viii) of the Act, 77 P.S. § 513(8)(viii). The date of injury is the earlier of the date on which the claim is filed or the last date of long-term exposure to hazardous occupational noise. Section 306(c)(8)(ix) of the Act, 77 P.S. § 513(8)(ix). All four of the claimants were still employed at Joy Mining when they filed their claim petitions.

## ORDER

AND NOW, this 28th day of August 2002, the orders of the Workers' Compensation Appeal Board in the above-captioned matters are affirmed. The respondents' motion for assessment of counsel fees is denied.