NEWCOMER PRODUCTS and Zurich
North America, Petitioners,

v.

WORKERS' COMPENSATION
APPEAL BOARD (IRVIN),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 2003.
Decided June 17, 2003.

Richard L. Muchow, Pittsburgh, for petitioners.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Newcomer Products and Zurich North America (hereafter collectively referred to as Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of the Workers' Compensation Judge (WCJ), granting the claim petition filed on behalf of William Irvin (Claimant). We now affirm.

Employer employed Claimant for approximately thirty-five years.[1] For the last five to seven years, Claimant was steadily employed as a furnace operator. In this position, Claimant was exposed to a constant humming noise from a pump on a scrubber system attached to the furnace as well as noise from an overhead exhaust fan and the discharging of the furnace. However, over the course of his employment, Claimant worked at various positions in Employer's facility, at or around noisy hydraulic presses and ballmills.[2] Although Claimant had worn ear protection over the last ten years of his employment, he indicated that he began experiencing ringing in his ears at the end of every shift.

Claimant visited with Dr. Michael Bell, a Board-certified otolaryngologist, in September of 1999. One month later, Claimant filed a claim petition against Employer alleging that he suffered hearing loss in excess of ten percent due to continuous exposure to hazardous occupational noise.[3] Claimant indicated a date of injury of September 22, 1999, the same date that he saw Dr. Bell. Employer filed an answer denying the material allegations of Claimant's petition and specifically raising as additional defenses that Claimant was not exposed to hazardous occupational noise, that Claimant had no long-term exposure and

---

1. Prior to starting his employment, Claimant served as an aircraft electrician in the United States Marine Corps from 1960 to 1964. While Claimant was occasionally exposed to noise from jet engines, Claimant did most of this work in a hangar in a quiet environment. Additionally, from 1976 to 1980, Claimant served as a flight crew member in the Air Force Reserves one weekend a month and from 1990 and continuing Claimant has served as a communications radio operator with the National Guard on weekends.

2. The ballmills consisted of a large cylinder containing carbide balls which rolled around inside crushing a substance into a powder form.

3. Claimant continued working for Employer during this time.

that the claim petition was barred by the three-year statute of limitations. The case was assigned to the WCJ and proceeded with hearings.

At these hearings, Claimant testified on his own behalf, relating a history of his employment with Employer and his ongoing hearing problems. Claimant also presented the September 22, 1999, medical report of Dr. Bell. In this report, Dr. Bell noted that Claimant had suffered a progressively worsening hearing loss over the last four years with occasional tinnitus. Dr. Bell indicated that an audiometric evaluation performed at this examination revealed bilateral, symmetrical moderate to severe sensorineural hearing loss.

Dr. Bell thereafter calculated Claimant's binaural hearing loss, using the American Medical Association's Guides to Evaluation of Permanent Impairment (AMA Guides), to be 11.563%. Based upon Claimant's history, physical examination and the audiometric test results, Dr. Bell opined that Claimant was exposed to sufficient industrial noise to constitute an occupational noise hazard. Dr. Bell further opined that Claimant's binaural hearing loss was secondary to his cumulative exposure to loud noises during the course of his employment with Employer.

In opposition to Claimant's petition, Employer presented the medical report of Dr. Douglas Chen, who performed an otologic evaluation of Claimant on April 13, 2000, at the request of Employer. At this examination, Claimant provided Dr. Chen with a history consistent with the facts detailed above. Dr. Chen noted a history of bilateral progressive hearing loss and bilateral tinnitus over the previous two years. Dr.

Chen also noted a report of dosimetry testing at Employer's facility in November of 1991 which revealed 74 decibel levels in the furnace region and regions surrounding the ballmill, the hammer and the separating area in excess of 90 decibels.[4]

Dr. Chen indicated that Claimant's otolaryngologic examination was normal, i.e., his tympanic membranes and ear canals were normal.[5] Dr. Chen indicated that Claimant underwent audiometric testing at his office which did reveal "a mild sloping to moderate sensorineural hearing loss bilaterally." (R.R. at 167a). Using the AMA Guides, Dr. Chen calculated Claimant's binaural hearing impairment to be only 5.63%. Dr. Chen noted that Claimant's hearing loss did not possess a 4,000 Hz notch and went on to conclude that Claimant's condition did not have the characteristics of noise-induced hearing loss.

Employer also presented the testimony and report of Dr. Dietrich Weyel, who is Board-certified in industrial hygiene. Dr. Weyel performed sound level testing at Employer's facility on May 3, 2000, and June 6, 2000. Dr. Weyel indicated that he used both a personal dosimeter and a sound pressure level meter to assess noise and noise exposure. Specifically, Dr. Weyel indicated that he attached the personal dosimeter to one of Claimant's co-workers in the furnace department and used another as a furnace area monitor. Dr. Weyel noted that the personal dosimeter revealed a 67.5 decibel level whereas the area monitor revealed a 65.3 decibel level.

Dr. Weyel also measured areas outside of the furnace department which tested mostly at levels below 90 decibels, with the

---

4. The Occupational Safety and Health Administration (OSHA) has set a standard of 90 db as the maximum permissible exposure limit over an eight-hour work shift. *See* Table G–16, Permissible Noise Exposures of OSHA's Occupational Noise Exposure Standards, 29 C.F.R. 1910.95.

5. Dr. Bell had also found these membranes and canals to be normal.

exception of the ballmill area, which tested between 93 and 97 decibels. Based upon these readings, Dr. Weyel opined that Claimant was not exposed to any noise at or above 90 decibels in the furnace department. On cross-examination, Dr. Weyel acknowledged that Claimant worked for Employer for more than the seven years he spent as a furnace operator and that he worked in various positions all over Employer's facility, including maintenance.

Dr. Weyel also acknowledged that he took no measurements from someone performing a maintenance position and that some areas did test in excess of 90 decibels. Additionally, Dr. Weyel admitted that he had not reviewed any prior noise studies conducted at Employer's facility. Further, Dr. Weyel admitted that Claimant suffered high frequency hearing loss, which is generally characteristic of noise-induced hearing loss. Moreover, Dr. Weyel indicated that he spent a total of approximately six hours at Employer's facility on the aforementioned dates and that said time would be indicative of Claimant's noise exposure in the prior three years.[6]

Furthermore, Employer presented the testimony of David Berenbrok, Claimant's direct supervisor in the furnace department. Mr. Berenbrok worked at Employer's facility for approximately twenty-six years, the last fifteen of which he has been supervisor. Mr. Berenbrok indicated that the machinery in the furnace department, including two furnaces, had not changed in the time he has been there and that the co-worker utilized in Dr. Weyel's testing does the exact job that Claimant regularly performs. Mr. Berenbrok noted that the noise where Claimant works comes from a scrubber system, which consists of a pump run by an electric motor.

Mr. Berenbrok noted that Claimant worked two shifts, first and second, which he alternated every other week.[7] However, during second shift weeks, Mr. Berenbrok indicated that Claimant was exposed to less noise as the furnaces usually begin a shut down process around 4:30 p.m. each day. Regarding the ballmills and hydraulic presses, Mr. Berenbrok noted that no noise from these operations can be heard in the furnace department as it is on the other side of the facility.[8]

On cross-examination, Mr. Berenbrok indicated that the scrubber pump, which produces the noise in the furnace department, begins operating when the furnace is turned on, usually around 7:30 a.m. each day, and continues operating along with the furnace. Mr. Berenbrok admitted that he is only in the furnace department from time-to-time during the day and that he does not spend the whole day there.[9]

Ultimately, the WCJ issued a decision and order granting Claimant's claim petition. In rendering his decision, the WCJ accepted the testimony of Claimant and Dr. Bell as credible and persuasive and rejected the report of Dr. Chen as well as the testimony of Dr. Weyel and Mr. Berenbrok. Based upon this credible testimony, the WCJ concluded that Claimant had established that he had suffered a perma-

6. In response to a question referencing Dr. Chen's report and the lack of a 4,000 Hz notch, Dr. Weyel indicated that such a notch only appears in the beginning stages of noise-induced hearing loss.

7. The first shift worked from 7:00 a.m. to 3:00 p.m., while the second shift worked 3:00 p.m. to 11:00 p.m.

8. Mr. Berenbrok noted that Employer's facility consists of approximately two acres under one roof.

9. In his direct testimony, Mr. Berenbrok had indicated that he was also the supervisor of the shipping department up to the beginning of 2000.

nent, bilateral sensorineural hearing loss of 11.563% as a result of cumulative exposure to hazardous occupational noise. The WCJ also concluded that Claimant had filed his claim within three years of his last date of exposure to such noise.

Regarding Dr. Chen, the WCJ indicated that he gave no specific reasons for Claimant's hearing loss and only indicated that his findings were not characteristic of noise-induced hearing loss. The WCJ noted that Dr. Chen indicated in his report that prior testing at Employer's facility revealed areas producing noise in excess of 90 decibels. Regarding Dr. Weyel, the WCJ indicated his belief that it was inappropriate to "extrapolate these six hours of noise studies to determine the claimant's hearing loss over the claimant's entire work history...." (WCJ's Decision, Finding of Fact No. 8). Regarding Mr. Berenbrok, the WCJ indicated that as he was not present in furnace department all of the time, he was "not qualified to give an opinion as to whether there is excessive noise in the area that the claimant works." *Id.* Based upon these findings, the WCJ indicated that he was giving the testimony/report of each of these witnesses very little weight. Employer appealed to the Board and the Board affirmed.

On appeal to this Court,[10] Employer argues that the Board erred in affirming the decision of the WCJ as said decision was not supported by substantial evidence. More specifically, Employer argues that the WCJ erred in capriciously disregarding material, competent evidence. We disagree.

■ Section 306(c)(8) of the Pennsylvania Workers' Compensation Act (Act)[11] addresses claims for hearing loss. To establish a right to compensation, a claimant has the burden of proving that he has sustained a permanent loss of hearing that is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise.[12] *See* Section 306(c)(8)(i) of the Act, 77 P.S. § 513(8)(i); *Bucci v. Workers' Compensation Appeal Board (Rockwell International)*, 758 A.2d 279 (Pa.Cmwlth.2000). Section 306(c)(8)(iv) of the Act provides that the "percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram."[13] 77 P.S. § 513(8)(iv).

Section 306(c)(8) of the Act was amended by the Act of February 23, 1995, P.L. 1 (commonly referred to as Act 1). Act 1 provides that "the percentage of impairment shall be calculated by using the bin-

---

10. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's recent decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

11. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8).

12. Whether the claimant was exposed to hazardous occupational noise is a question of fact to be found by the WCJ. *Joy Mining Machinery v. Workers' Compensation Appeal Board (Noggle)*, 805 A.2d 1279 (Pa.Cmwlth.2002).

13. This Section further provides that "[t]he audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure)...." 77 P.S. § 513(8)(iv).

aural formula provided in the [AMA's] Impairment Guides" and "[t]he number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment ... by two hundred sixty weeks." *See* Section 306(c)(8)(i) of the Act. In addition, Act 1 provides that no benefits shall be payable if there is a level of binaural hearing impairment as calculated under the impairment guides which is equal to or less than "ten per centum." Section 306(c)(8)(iii) of the Act, 77 P.S. § 513(8)(iii).

■ Furthermore, once a claimant has satisfied his or her initial burden, an employer may raise as affirmative defenses whether the claimant has been exposed to hazardous occupational noise and/or whether the claimant has long-term exposure to such noise. Section 306(c)(8)(x) of the Act, 77 P.S. § 513(8)(x); *General Electric Company v. Workers' Compensation Appeal Board (Bower)*, 734 A.2d 492 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 679, 749 A.2d 473 (2000). For an employer to prove these affirmative defenses, it must establish "that claimant was not exposed to sound levels equal to or in excess of 90 dBA during the period the claimant is contending that he or she was exposed to long-term hazardous noise" or "if exposed to a noise level equal to or in excess of 90 dBA, the exposure during that period did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year for which exposure to long-term hazardous noise is claimed." *General Electric Company*, 734 A.2d at 496.

In its brief to this Court, Employer concedes that Claimant met his burden of establishing a prima facie case of his entitlement to hearing loss benefits. Employer, however, argues that the WCJ capriciously disregarded the evidence it submitted to establish its affirmative defenses. Specifically, Employer points to the uncontradicted testimony of Dr. Weyel and Mr. Berenbrok. We have previously described a capricious disregard of evidence as a "willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Hinton v. Workers' Compensation Appeal Board (City of Philadelphia)*, 787 A.2d 453, 456 (Pa. Cmwlth.2001) (citations omitted).

■ Contrary to Employer's assertions, we agree with the Board that the WCJ did not capriciously disregard the testimony of Dr. Weyel or Mr. Berenbrok. Instead, the WCJ provided detailed findings of fact regarding the testimony of each of these witnesses and thereafter utilized his authority over credibility determinations and weight of evidence to find such testimony to be unpersuasive and entitled to little weight. Employer is really disputing the reasoning underlying the WCJ's credibility/weight of evidence determinations, i.e., the WCJ's statement that Mr. Berenbrok was not qualified to give an opinion as to excessive noise in the furnace department and that Dr. Weyel inappropriately extrapolated six hours of noise studies to Claimant's entire work history. Although we might not necessarily agree with the WCJ's reasoning, such determinations are outside the purview of this Court.

■ The law remains well settled that the WCJ is the ultimate finder of fact and has exclusive province over questions of credibility and evidentiary weight. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board and Krawczynski*, 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). In making such determinations, the WCJ is at liberty to accept or reject the testimony of any witness, including a medical witness, in whole or in part.

*Carr v. Workmen's Compensation Appeal Board (May Department Store)*, 671 A.2d 780 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 662, 676 A.2d 1202 (1996). Moreover, a referee is not required to accept even uncontradicted testimony as true. *McGarry v. Workmen's Compensation Appeal Board (Morrissey)*, 146 Pa.Cmwlth.594, 606 A.2d 648 (1992), *petition for allowance of appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993).

We encountered a similar situation in *Joy Mining Machinery*, wherein we affirmed the orders of the Board, which affirmed the award of hearing loss benefits to four individual claimants by the WCJ. In *Joy Mining Machinery*, the WCJ specifically rejected the expert testimony of two witnesses hired by employer in that case to conduct sound level surveys in its facility.[14] In rejecting this testimony, the WCJ noted that "no employee wore a dosimeter for eight hours [the length of a shift] and that sound level readings were not taken using a hand-held device in any work area for any substantial length of time." *Joy Mining Machinery*, 805 A.2d at 1282.

Given the WCJ's rejection of the expert testimony presented by the employer, we held in that case that the employer had failed to produce credited evidence sufficient to meet its burden with respect to its affirmative defenses.[15] The same is true of the present case. As the WCJ specifically rejected the testimony presented on behalf of Employer, i.e., the testimony of Dr. Weyel and Mr. Berenbrok, we agree with the Board and the WCJ that Employer failed to produce sufficient evidence to meet its burden with respect to its affirmative defenses. Thus, we cannot say that that the WCJ erred in capriciously disregarding material, competent evidence. Nor can we say that the Board erred in affirming the decision of the WCJ.

■ Next, we must address Claimant's motion for counsel fees pursuant to Pa. R.A.P. 2744 on the basis that Employer's appeal was frivolous. Pa. R.A.P. 2744 provides that an appellate court may award a reasonable counsel fee "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." In other words, such an award is left to the discretion of this Court. *See Simmons v. Delaware County Tax Claim Bureau*, 796 A.2d 400 (Pa.Cmwlth.2002).

■ Claimant contends that Employer's appeal consisted of nothing more than an invitation to this Court to re-assess the credibility of the witnesses and the weight to be accorded to the evidence. We agree. As noted above, Employer's appeal to this Court consisted solely of a challenge to the reasoning underlying the WCJ's rejection of the testimony of Dr. Weyel and Mr. Berenbrok. Also as noted above, the law is well settled that that the WCJ has exclusive province over these types of issues, i.e., questions of credibility and evidentiary

14. Despite the fact that the WCJ rejected the testimony of these expert witnesses, the WCJ did accept the numerical results of the sound level surveys that formed the basis of the witnesses' testimony.

15. Specifically, we held that employer had "produced no credited evidence to establish that the claimants were not exposed to sound levels equal to or in excess of 90 dBA" or that "the claimants' exposure did not exceed the permitted daily exposure for three days a week for 40 weeks in any one year while they were exposed to hazardous occupational noise." *Joy Mining Machinery*, 805 A.2d at 1283. Moreover, we noted that employer's argument that the WCJ erred in rejecting the opinions of its medical experts was "nothing more than a challenge to the judge's credibility determinations...." *Id.*

weight. *Universal Cyclops Steel Corporation.* Thus, we are left with no choice other than to conclude that Employer's appeal in this matter was frivolous, to grant Claimant's motion for assessment of counsel fees and to award Claimant counsel fees in the amount of $600.00.[16]

Accordingly, the order of the Board is affirmed.[17]

### ORDER

AND NOW, this 17th day of June, 2003, the order of the Workers' Compensation Appeal Board is hereby affirmed. The motion for assessment of counsel fees filed on behalf of William Irvin (Claimant) is granted and Claimant is awarded counsel fees in the amount of $600.00.

**16.** In his motion for assessment of counsel fees, Claimant's counsel indicates that he reasonably estimates having spent approximately four hours working on this case at the rate of $150.00 per hour.

**17.** Employer raises an issue in its brief to this Court concerning the WCJ's alleged failure to issue a reasoned decision in accordance with Section 422(a) of the Act, 77 P.S. § 834. However, Employer failed to raise this issue in its petition for review. The law is well settled that issues not raised in a petition for review are waived and will not be addressed by this Court. *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski),* 688 A.2d 259 (Pa.Cmwlth.1997).