IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryn Mawr Landscaping Company, :
     Petitioner :
         :
   v.     : No. 1268 C.D. 2018
         : Submitted: February 22, 2019
Workers' Compensation Appeal Board :
(Cruz-Tenorio),    :
     Respondent :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT     FILED: October 18, 2019

   Bryn Mawr Landscaping Company (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted Jonathan De Jesus Cruz-Tenorio's (Claimant) claim petition and denied Employer's termination and suspension petitions that were each submitted pursuant to the Workers' Compensation Act (Act).[1] In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant suffered a disabling injury at work. Discerning no error, we affirm the Board.

   Claimant worked for Employer for three years performing tree trimming and removal services. On May 15, 2015, Claimant was struck in the head by a large tree branch. On June 1, 2015, Employer issued a medical only Notice of Temporary Compensation Payable (NTCP) listing head concussion as the injury. On June 2, 2015, Employer issued a second medical only NTCP accepting head contusion as Claimant's injury.[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2710.

[2] Steel Suppliers Erectors, Inc. was improperly listed as the employer on the first NTCP.

On August 5, 2015, Claimant filed a claim petition alleging that he sustained a "concussion, traumatic brain injury with difficulty comprehending, memory loss, severe headaches and migraines, severe dizziness, head pain, bilateral vision problems including double vision, neck pain that radiates to the right shoulder; anxiety and depression" as a result of the May 15, 2015, incident. Reproduced Record at 2 (R.R.__). On the same day, Claimant filed a penalty petition asserting that Employer had violated the Act by not issuing a Notice of Compensation Payable (NCP) and not paying indemnity benefits as of the date of injury. Claimant further averred that Employer interfered with his ability to obtain medical treatment. Employer filed an answer denying the allegations, and the matter was assigned to a WCJ. Thereafter, Employer filed a termination petition alleging that Claimant had fully recovered from his work-related injuries. Employer also filed a suspension petition seeking, as "lesser included relief," a change in Claimant's status to partially disabled because he could not lawfully work in the United States. R.R. 31.

Claimant testified before the WCJ on September 3, 2015. Claimant, who is a citizen of Mexico, testified that he has come to the United States to work for Employer every year since 2012. He explained that his job with Employer required him to cut branches with a chainsaw and place them in a branch chipper. On May 15, 2015, a tree branch being pulled by a cable struck him in the head behind his right ear. The force was strong enough to break the right ear protector of his helmet. Claimant immediately saw darkness and experienced dizziness and head pain. Claimant was initially treated in the emergency room at Paoli Hospital. Thereafter, he began treating with Dr. Dan Gzesh, a neurologist, and Dr. Bruce Menkowitz, an orthopedic surgeon.

2

Claimant testified that the injury caused pain to his head, neck and right shoulder. The pain in his head extended from behind his right ear to the front of his head. He experienced memory loss, dizziness, vision problems and nervousness. On June 15, 2015, he was driving to get a prescription but became confused and could not remember where he was or where he was going. He called his brother, who took him to Einstein Hospital Emergency Room. Claimant has not driven since this incident.

Claimant testified by deposition on February 2, 2016. As of that date, Claimant was still treating with Dr. Gzesh and Dr. Menkowitz, who had not cleared him to return to work. Claimant testified that he continues to suffer headaches, neck and right shoulder pain and, on occasion, dizziness and blurry vision. Claimant stated that he was depressed, nervous and insecure because of his symptoms. Claimant was going to physical therapy twice a week to treat his neck and shoulder pain.

Claimant offered the deposition testimony of Dr. Gzesh, a board-certified neurologist, who began treating Claimant in June 2015 for headaches, dizziness, double vision, memory loss, hearing loss, ringing noises in his ears and problems with balance and trouble sleeping at night.

After a physical and neurological examination, Dr. Gzesh found that Claimant had abnormal eye movements, which Dr. Gzesh deemed congenital. Claimant also had nystagmus, a condition causing beating eye movements when a patient looks in one direction. Dr. Gzesh explained that nystagmus may be caused by problems with the vestibular system, which was distinct from Claimant's congenital abnormal eye movements. Dr. Gzesh diagnosed Claimant with post-

concussive syndrome,[3] post-concussive headaches, nystagmus and vestibular dysfunction, all of which he attributed to the May 15, 2015, injury.

Dr. Gzesh referred Claimant for vestibular therapy to help with his dizziness and ordered magnetic resonance imaging (MRI) to rule out other possible causes of Claimant's nystagmus. Dr. Gzesh saw Claimant again in July, September, and November of 2015. During this time, Dr. Gzesh prescribed four different medications, none of which alleviated Claimant's headaches. Dr. Gzesh stated that this is not uncommon. Claimant could not attend vestibular therapy because his insurance did not cover the cost.

Dr. Gzesh opined that Claimant's initial symptoms had not resolved. He stated that Claimant's return to work in tree trimming was a "very poor idea" because of Claimant's impaired cognition and balance. N.T., 11/25/2015, at 24; R.R. 322. On cross-examination, Dr. Gzesh conceded that post-concussive symptoms usually resolve after a three to six-week period but stated that it is "not uncommon for people to have persistent symptoms [for] more than six months." *Id.* at 65; R.R. 363. Dr. Gzesh further explained that if a patient is unable to receive vestibular therapy when it is prescribed, his recovery from post-concussive syndrome will be delayed and his balance and function may be adversely affected.

Claimant offered the deposition testimony of Dr. Menkowitz, who is board certified in orthopedic surgery. Dr. Menkowitz began treating Claimant in August 2015. Claimant reported pain and limited motion in his right arm and pain in his neck. A physical examination revealed Claimant had full range of cervical motion, but experienced tenderness in his right shoulder and pain during extension

---

[3] Post-concussive syndrome is a group of symptoms present after a head injury and can include headaches, dizziness, insomnia, depression, cognitive impairment, anorexia, irritability, mood swings and depression. Notes of Testimony (N.T.), 11/25/2015, at 18; R.R. 316.

4

and internal rotation of his right arm. Dr. Menkowitz diagnosed Claimant with a cervical sprain and strain, neuralgia, neuritis and radiculitis, all of which were directly related to Claimant's May 15, 2015, injury. Dr. Menkowitz recommended physical therapy and an MRI of Claimant's cervical spine.

Dr. Menkowitz saw Claimant again in October 2015. Claimant reported pain in his right shoulder. An MRI revealed inflammation in the right rotator cuff and adhesive capsulitis, which occurs when "the covering over the joint has become thickened and tightened down" and "restricts motion." N.T., 11/13/2015, at 20; R.R. 414. This condition is known as an "acquired stiff shoulder," and it remained the same when Dr. Menkowitz saw Claimant in November 2015. Dr. Menkowitz opined that Claimant could not return to his pre-injury job, but that he could work in a sedentary capacity.

On cross-examination, Dr. Menkowitz conceded that there was no indication that Claimant had been struck in the shoulder, but explained that "in any injury where the side of the head is struck there's going to be motion of the neck. And any motion that is not voluntary has an extremely high incidence of causing tissue damage." *Id*. at 42-43; R.R. 436-37. This tissue damage limits the motion of the neck and extends to the shoulder, causing adhesive capsulitis. Dr. Menkowitz opined that adhesive capsulitis does not resolve on its own and typically requires physical therapy and anti-inflammatory medications. However, Dr. Menkowitz could not prescribe anti-inflammatory medications because of Claimant's neurological issues.

Claimant presented the deposition testimony of Jennifer Bertolini, the adjuster who began handling his claim on August 14, 2015. Bertolini testified that the Paoli Hospital Emergency Room records of May 26, 2015, reported that

5

Claimant sustained head and cervical injuries. On June 1, 2015, Employer issued a medical only NTCP stating there was no medical evidence of disability. Employer also received disability notes from Dr. Gzesh and Dr. Menkowitz, but did not pay Claimant because it was waiting for an affidavit of recovery from its own physicians. Bertolini conceded that Claimant had a valid work visa on the date of injury, but Employer investigated Claimant's immigration status in May 2015 to see how it impacted the claim.

Employer offered the deposition testimony of Dr. Richard Katz, a board-certified neurologist who conducted an independent medical examination (IME) of Claimant on October 8, 2015. Dr. Katz testified that his examination of Claimant was normal, except for findings related to Claimant's nystagmus and the slight deviation of his right eye. Dr. Katz opined that these findings indicated a problem with Claimant's brain stem that could not be attributed to Claimant's May 15, 2015, work injury. Dr. Katz further stated that Claimant sustained a concussion from the work injury and that most patients recover in 6 to 12 weeks. He agreed with Dr. Gzesh's diagnosis of post-concussive syndrome but disagreed that the syndrome continued as of his IME. He did not believe Claimant's complaints were attributable to the work injury. Dr. Katz disagreed with Dr. Gzesh's diagnosis of vestibular dysfunction because Claimant had no symptoms of vertigo.

Employer also provided the deposition testimony of Dr. Arnold Berman, a board-certified orthopedic surgeon, who did an IME of Claimant on October 13, 2015. Dr. Berman determined Claimant had suffered a neck strain and sprain that radiated to the right shoulder, but it had resolved. Dr. Berman explained that a neck strain and sprain typically resolves itself in two to four weeks, but occasionally resolves in six to eight weeks. Dr. Berman opined that abnormalities

6

found on the MRI were attributable to Claimant's prior unrelated repetitive heavy work and lifting as a landscaper.

Employer presented the deposition testimony of its president, Thomas Foga, Jr. He testified that Employer sponsored workers every year and that these workers were authorized to work in the United States by an H-2B visa from April to December each year. Foga testified that he did not know about Claimant's immigration status after the date of his injury on May 15, 2015.

In April 2016, the parties submitted a stipulation of facts to the WCJ, which she accepted. The stipulation read, in pertinent part, as follows:

> 8. Upon approval of this Stipulation, Employer agreed Claimant will receive [Temporary Total Disability] benefits for the closed period of May 15, 2015 through October 13, 2015 at an average weekly wage of $494.60 corresponding to a compensation rate of $445.14.
>
> * * *
>
> 11. The Employer admits that Claimant's accepted injury will include a cerebral concussion pursuant to Dr. Richard Katz's October 8, 2015 IME report. The Employer also admits Claimant's accepted injury will include a neck sprain/strain pursuant to Dr. Arnold Berman's October 13, 2015 IME report. Acceptance of these diagnoses was proposed via stipulation to Claimant's counsel on February 5, 2016.
>
> 12. Currently pending before the Honorable Kelly Melcher is Claimant's Claim Petition, Penalty Petition and Employer's Termination Petition and Suspension Petition. The Parties agree the Stipulation of Fact only resolves the Claim Petition, except for Claimant's claim for unreasonable contest attorney's fees. Employer will be proceeding with litigation on the Termination and Suspension Petitions and Claimant will proceed with the Penalty Petition.
>
> 13. The Parties reserve all other rights under the Act. Claimant specifically reserves the right to file a Review Petition to expand the description of injury. Employer specifically reserves the right

to file future petitions to modify, suspend, or terminate Claimant's benefits. Employer also reserves the right to file a Utilization Review Request to address the reasonableness and necessity of Claimant's medical treatment.

14. Claimant and his attorney have entered into a fee agreement of 20% which will be deducted from the Claimant's share of benefits.

R.R. 844-45.

The WCJ granted Claimant's claim petition and denied Employer's termination and suspension petitions. The WCJ found Claimant's testimony credible and persuasive. She found that Claimant was authorized to work in the United States on the date of the injury, May 15, 2015, pursuant to an H-2B visa.[4] The WCJ found that Claimant's compensable injuries included a concussion and post-concussive syndrome, vestibular dysfunction, nystagmus, cervical sprain/strain, right shoulder sprain/strain, radiculitis, adhesive capsulitis, neuritis and neuralgia. The WCJ further found that Claimant was not able to return to work.

---

[4] An H-2B visa is issued pursuant to Section 101(a)(15)(H)(ii)(b) of the Immigration and Nationality Act of 1952, which provides, in part:

> (15)  The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
>
> * * *
>
> (H)   an alien
>
> * * *
>
> > (ii)(b)  having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country.

8 U.S.C. §1101(a)(15)(H)(ii)(b).

The WCJ credited Dr. Gzesh's testimony over that of Dr. Katz, citing Dr. Gzesh's status as Claimant's treating physician and his sterling credentials. The WCJ discredited Dr. Katz's testimony that Claimant had fully recovered because there was no evidence that his ongoing symptoms pre-dated the work injury. The WCJ found Dr. Menkowitz's testimony more credible and persuasive than Dr. Berman's testimony because he was Claimant's treating physician. The WCJ noted that Dr. Menkowitz's opinions were consistent with Claimant's testimony about his ongoing symptoms. As to the cause of Claimant's neck and right shoulder pain, the WCJ stated that "Dr. Berman acknowledged the findings in the right shoulder on MRI but opined that the findings were unrelated to the work injury of May 15, 2015 but then stated that the findings were the result of work activities as a landscaper." WCJ Decision, 12/12/2016, at 19. Citing these contradictory findings, the WCJ discredited Dr. Berman's testimony.

The WCJ credited Bertolini's testimony about when Employer learned of Claimant's injuries and work restrictions. The WCJ concluded that Employer violated the Act by not paying indemnity benefits despite receiving out-of-work notes from Paoli Hospital's emergency room and Claimant's neurologist. The WCJ granted Claimant's penalty petition, assessing a 50-percent penalty on all outstanding indemnity benefits and a 25-percent penalty on the indemnity benefits already paid in January 2016. The WCJ further found that Employer failed to present a reasonable contest from the date of the injury through October 13, 2015, the date of Dr. Berman's IME. Although Claimant had not submitted a *quantum meruit* fee request, the WCJ determined that an appropriate award of counsel fees for the limited scope of the unreasonable contest was $4,000.00. Because Claimant's counsel had already received $2,390.14, the WCJ ordered that the remainder of the

9

$4,000.00 would be paid by Employer without deducting it from Claimant's ongoing wage loss "until such time that it represents 20% of the fees owed from the indemnity benefits from October 14, 2015 and ongoing. Thereafter, 20% shall be deducted from Claimant's weekly indemnity benefits." *Id.* at 22. Employer appealed to the Board.

On appeal, the Board reversed the grant of Claimant's penalty petition. The Board remanded the matter to the WCJ to allow Claimant to submit an itemization of litigation costs. On remand, the WCJ awarded reimbursement of Claimant's litigation costs in the amount of $7,684.64. Employer appealed the WCJ's second decision for the sole purpose of obtaining an order from the Board making its prior order final and appealable to this Court. The Board granted this request.

On appeal,[5] Employer raises several issues. First, Employer argues that Claimant did not sustain his burden of proving his entitlement to benefits because he offered no evidence that he can lawfully work in the United States. Second, Employer argues that, even if Claimant were entitled to benefits, the WCJ erred in denying its suspension petition because the record showed Claimant's work visa had expired and he was physically capable of returning to sedentary work. Third, Employer argues that the WCJ's findings that Claimant suffered additional injuries are not supported by substantial evidence and the WCJ's decision is not well-reasoned. Fourth, Employer argues that the WCJ erred in awarding Claimant litigation costs and in holding that Claimant's counsel is entitled to a *quantum meruit*

---

[5] Our review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence. *Reed v. Workers' Compensation Appeal Board (Allied Signal, Inc.)*, 114 A.3d 464, 468 n.3 (Pa. Cmwlth. 2015). Additionally, when raised, this Court will review for capricious disregard of evidence. *Id.*

fee. Claimant counters that Employer's petition for review is frivolous and, accordingly, he is entitled to an award of counsel fees by this Court.

In its first issue, Employer argues that Claimant did not sustain his burden of proving his entitlement to benefits because he offered no evidence that he can lawfully work in the United States.[6] A claimant seeking workers' compensation benefits must establish: (1) he was injured while in the course of employment, and (2) the injury resulted in a loss of earning power. *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Baxter)*, 708 A.2d 801, 802 (Pa. 1998). Our Supreme Court has explained:

> Inasmuch as these are the **only** two things a claimant is required to demonstrate in order to successfully maintain a claim petition and obtain compensation for wage loss and medical treatment costs under the [Act], a claimant's eligibility to lawfully work in the United States is not a relevant consideration in establishing either of these factors.

*Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties)*, 99 A.3d 397, 407 (Pa. 2014) (emphasis in original). The WCJ found that Claimant proved that he sustained a work-related injury on May 15, 2015, that this injury caused Claimant's ongoing disability. His citizenship status was irrelevant to his

---

[6] Claimant responds by stating that he was not undocumented on the date of his injury; therefore, his immigration status did not cause his wage loss. Claimant asserts that even if he was undocumented, Employer waived this argument by stipulating that Claimant met his burden of showing "disability" for purposes of the claim petition. Claimant Brief at 9. The parties entered into a Stipulation of Fact in April 2016. *See* R.R. 843-45. Employer accepted Claimant's injuries as a cerebral concussion and neck sprain/strain pursuant to its experts' testimony. Generally, "once a stipulation of facts has been effectively entered into, there can be no valid contention or conclusion that facts within the scope of the stipulation are unsupported by substantial evidence." *Kostecky v. Mattern*, 452 A.2d 100, 104 (Pa. Cmwlth. 1982). However, the parties did not stipulate that Claimant's work injury was the sole cause of his disability.

eligibility for benefits. *Id.* Simply, Employer's argument on Claimant's ability to work in the United States lacks merit.

In its second issue, Employer argues that, even if Claimant is entitled to benefits, the WCJ erred in denying its suspension petition. The record shows that Claimant's work visa had expired and he was physically capable of returning to work.

Beginning with the visa issue, Employer asserts that it met its burden for suspension of benefits because Claimant's "disability," *i.e.*, lack of earning capacity, is attributable to his undocumented status. Employer further asserts that Claimant had the burden of proving that he was legally entitled to work in the United States following the date of his injury. We disagree.

Under Section 413 of the Act, 77 P.S. §772, a claimant's benefits may be suspended if his loss of earning capacity can be attributed to something other than the work-related injury.[7] The employer has the burden of proof on this point. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Employer did not establish that Claimant was an unauthorized alien and that his loss of earning power was

---

[7] Section 413 provides, in part:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed.

77 P.S. §772.

caused by his immigration status, as opposed to his work injury. Employer's president, Thomas Foga, Jr., testified that he believed Claimant's visa had expired in December 2015, but he acknowledged that he was not sure of Claimant's immigration status after his injury. Claimant was working legally pursuant to his H-2B visa when he sustained the work-related injury, and the WCJ so found. Employer failed to establish that Claimant's loss of earning power was caused solely by his immigration status.

Employer asserts as an alternative basis for suspension that Claimant was capable of returning to work. The WCJ found that Employer offered no credible evidence that Claimant was capable of working in any capacity, which is supported by the credited evidence. Dr. Gzesh opined that Claimant could not return to work because of his impaired cognition and balance. Dr. Menkowitz did not believe Claimant could return to his pre-injury job but might be able to work in a sedentary position. Accordingly, the WCJ did not err in denying Employer's suspension petition.

Employer asserts that Dr. Katz and Dr. Berman provided substantial evidence that Claimant could return to work. However, the WCJ did not find either witness credible or persuasive. Instead, the WCJ credited Dr. Gzesh's statements that Claimant could not return to work because of his impaired cognition and balance. Dr. Menkowitz conceded that Claimant could work in a sedentary position, but that was not dipositive because Dr. Gzesh would not clear him to work because of his neurological issues. The WCJ credited the testimony of both of Claimant's doctors, and the WCJ, as factfinder, has sole discretion to assess credibility and to resolve conflicts in the evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). We decline

13

to revisit the WCJ's credibility determinations. *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005) (explaining that this Court is bound by the WCJ's credibility determinations).

In its third issue, Employer argues that the WCJ's findings that Claimant suffered additional injuries are not supported by substantial evidence and the WCJ's decision is not well-reasoned. More specifically, Employer argues that the record does not support the WCJ's conclusion that Claimant sustained injuries in addition to the concussion and cervical sprain/strain identified in the stipulation. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1387 (Pa. 1985). In doing a substantial evidence analysis, this Court views the evidence in a light most favorable to the party who prevailed before the factfinder. *Birmingham Fire Insurance Company v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96, 98 (Pa. Cmwlth. 1995).

The WCJ credited Claimant's medical experts, Dr. Gzesh and Dr. Menkowitz, that Claimant sustained additional injuries to his eyes, neck and right shoulder. Dr. Gzesh opined that Claimant's nystagmus was caused by a problem with his vestibular system as a result of the work injury. Claimant was unable to afford vestibular therapy to help with his eyes so his condition did not improve. The WCJ found Dr. Gzesh more credible and persuasive than Employer's neurologist, Dr. Katz, because Dr. Gzesh was Claimant's treating physician, whereas Dr. Katz saw Claimant only for the purposes of litigation. The WCJ also found that Dr. Gzesh had superior credentials.

14

Similarly, the WCJ credited Dr. Menkowitz's testimony regarding Claimant's additional neck and right shoulder injuries because he treated Claimant on numerous occasions. Both doctors agreed that Claimant sustained a work-related injury to his neck and right shoulder. Employer's orthopedic expert, Dr. Berman, attributed Claimant's right shoulder pain to his work as a landscaper, but then stated it was unrelated to the work injuries, which the parties stipulated occurred while Claimant was performing landscaping work. The WCJ discredited Dr. Berman's contradictory testimony. On the other hand, the WCJ found Dr. Menkowitz's testimony on this point was consistent with Claimant's testimony. In sum, the WCJ's findings on additional injuries are supported by substantial competent evidence.

Finally, Employer argues that the WCJ improperly awarded litigation costs and *quantum meruit* fees to Claimant. Employer argues that Claimant was not entitled to litigation costs because "there was no evidence of litigation costs until a second hearing was held on February 22, 2018 pursuant to the [Board's remand]," and that, based on the record, no costs should be awarded to Claimant because "there [was] no reason for essentially reopening the record." Employer Brief at 35. However, Section 440(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §996(a),[8] provides that a successful claimant

---

[8] Section 440(a) provides:

(a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings:

15

*shall* be awarded litigation costs. Indeed, the Board's regulations provide that the evidentiary record may be held open if it is determined that additional evidence needs to be submitted. 34 Pa. Code §131.101(c).[9]   Because the issues in this case were decided in Claimant's favor, the WCJ did not err in awarding costs in the amount of $7,684.64. *Braun Baking Company v. Workmen's Compensation Appeal Board (Stevens)*, 583 A.2d 860, 864 (Pa. Cmwlth. 1990) (when a claimant prevails on a petition under the Act, this Court defers to the WCJ's exercise of discretion in awarding reasonable litigation costs.).

Employer also asserts that the WCJ erred in finding that Employer's contest was not reasonable and that Claimant was entitled to an award of attorney fees. Section 440(a) of the Act, 77 P.S. §996(a), provides that a claimant who is successful in whole or in part in the litigation is entitled to an award of attorney fees, unless the employer's contest is reasonable. *Jones v. Workers' Compensation Appeal Board (Steris Corporation)*, 874 A.2d 717, 720 (Pa. Cmwlth. 2005). A contest is reasonable where the employer presents medical evidence that is contrary to the claimant's evidence and where it is evident that the employer's contest is not

---

Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. §996(a).

[9] Section 131.101(c) provides:

(c) The evidentiary record is closed when the parties have submitted all of their evidence and rested or when the judge has closed the evidentiary record on a party's motion or the judge's own motion. *If the judge determines that additional hearings are necessary, or that additional evidence needs to be submitted, or if the judge schedules additional written or oral argument, the evidentiary record may be held open by the judge.* When the judge determines that the evidentiary record is closed, the judge will notify the parties that the evidentiary record is closed on the record or in writing.

34 Pa. Code §131.101(c) (emphasis added).

16

frivolous or done to harass the claimant. *United States Steel Corporation v. Workers' Compensation Appeal Board (Luczki)*, 887 A.2d 817, 821 (Pa. Cmwlth. 2005). "[T]he reviewing court must look at the totality of the circumstances," not whether there is a conflict in the evidence on which one party prevails. *Majesky v. Workmen's Compensation Appeal Board (Transit America, Inc.)*, 595 A.2d 761, 764 (Pa. Cmwlth. 1991). The reasonableness of an employer's contest depends on whether the issue involved a genuine dispute, which can be a legal or factual issue, or both. *McGuire v. Workmen's Compensation Appeal Board (H.B. Deviney Co., sub. of J.M. Smucker Co.)*, 591 A.2d 372, 374 (Pa. Cmwlth. 1991).

The WCJ found that Employer failed to present a reasonable contest from the date of injury through October 13, 2015, the date of Dr. Berman's IME report stating that Claimant had fully recovered. We agree with the WCJ that Employer's contest became reasonable once it received Dr. Berman's report. We also agree with the WCJ's conclusion that Employer's contest before October 13, 2015, was not reasonable. That conclusion is supported by the record evidence, *i.e.*, the testimony by the claims adjuster for Employer's insurer that it received a note from the Paoli Hospital Emergency Room excusing Claimant from work but still contested Claimant's entitlement to disability compensation. Further, Employer issued a medical only NTCP. The claims adjuster also testified that Employer had Claimant's emergency room records and information confirming that Claimant had a legitimate work visa and could not work. Because Employer failed to present a reasonable contest until October 13, 2015, we find that the WCJ did not err in awarding attorney fees.

As to the amount of attorney fees awarded, *quantum meruit* fees are based on the "complexity of the factual and legal issues involved" and the skills

17

required and actually expended. *Ramich v. Workers' Compensation Appeal Board (Schatz Electric, Inc.)*, 770 A.2d 318, 322 (Pa. 2001) (quoting Section 440(b) of the Act, 77 P.S. §996(b)). So long as the amount and difficulty of the work performed by counsel is reasonably related to the fee, this Court will not disturb the award. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 231 (Pa. Cmwlth. 2008). During her representation of Claimant for the period from the date of injury through October 13, 2015, Attorney Levin defended against Employer's petitions, filed several petitions and attended hearings and depositions. The WCJ's award of a *quantum meruit* attorney fee of $4,000.00 for the hours spent by Attorney Levin is reasonable and supported by the record.

Finally, we address Claimant's request for counsel fees. Pennsylvania Rule of Appellate Procedure 2744 permits an appellate court to award reasonable counsel fees "if it determines that an appeal is frivolous … or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." PA. R.A.P. 2744. A frivolous appeal is one that "has no justiciable question presented, is recognizable as devoid of merit and has little prospect of success." *Carson/Kent Joint Venture v. Workmen's Compensation Appeal Board (Scafidi)*, 663 A.2d 828, 830 (Pa. Cmwlth. 1995).

Claimant argues that Employer's appeal is frivolous because it asks this Court to reassess the WCJ's credibility determinations and reweigh the evidence. We agree. Employer's appeal to this Court consisted solely of a challenge to the reasoning underlying the WCJ's determinations of credibility and evidentiary weight. As noted above, the WCJ has the sole discretion to assess credibility and to resolve conflicts in the evidence. *Bethenergy Mines, Inc.*, 612 A.2d at 437. For these reasons, Claimant is entitled to reasonable attorney fees in accordance with

18

Rule 2744. *See Newcomer Products v. Workers' Compensation Appeal Board (Irvin)*, 826 A.2d 69, 75 (Pa. Cmwlth. 2003) (a claimant was entitled to counsel fees when his employer's appeal "consisted of nothing more than an invitation [] to re-assess the credibility of the witnesses and the weight to be accorded to the evidence.").

Accordingly, we affirm the Board's order and award reasonable counsel fees in accordance with PA. R.A.P. 2744 to Claimant. Claimant must file a bill of costs indicating the attorney's hourly rate and the total hours worked on the appeal in this case.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryn Mawr Landscaping Company,   :
                Petitioner      :
                               :
        v.              :    No. 1268 C.D. 2018
                               :
Workers' Compensation Appeal Board  :
(Cruz-Tenorio),               :
                Respondent  :

# **O R D E R**

AND NOW, this 18th day of October, 2019, the order of the Workers' Compensation Appeal Board dated August 28, 2018, in the above-captioned matter is AFFIRMED, and liability for reasonable counsel fees is imposed on Bryn Mawr Landscaping pursuant to PA. R.A.P. 2744. Claimant, Jonathan De Jesus Cruz-Tenorio, must file an itemized bill of costs with this Court indicating the attorney's hourly rate and the total hours worked on the appeal in this case within 30 days of this order.

_____
MARY HANNAH LEAVITT, President Judge