Anthony CAPASSO, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (RACS ASSOCIATES, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 26, 2004.

Decided May 17, 2004.

William A. Bendon, Media, for petitioner.

Victoria Fogel, Blue Bell, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Anthony Capasso (Claimant) appeals from an order denying Claimant's Petition seeking reinstatement of his suspended benefits under the Workers' Compensation Act (Act).[1] We agree Claimant is ineligible for benefits under a reinstatement after retirement analysis. Thus, we affirm.

Claimant was employed with RACS Associates, Inc. (Employer) as a working foreman, in which position he was required to perform ninety percent of his work over his head. Workers' Compensation Judge (WCJ) Finding of Fact (F.F.) No. 5. Claimant was injured at work in 1991, and a Notice of Compensation Payable described the injury as a cervical strain. F.F. No. 1. Claimant and Employer executed a Supplemental Agreement in 1992, suspending Claimant's benefits because he returned to work without a loss of wages. F.F. No. 2.

Claimant returned in a light-duty capacity, working as a foreman without performing any overhead work. F.F. No. 5. Claimant organized the job, made sure everything ran smoothly, and took care of paperwork. Id. Claimant continued in that capacity for about two more years, at

which time he felt Employer was on the verge of going out of business, so he left to find another job. Id. Claimant worked for another employer in the same type of non-working foreman position for three or four years before being laid off. Id. Claimant then went to work for another employer in a non-working foreman position for six to eight months before being laid off. Id. Claimant testified the union was slowing down, and there was no way he could return to the work force. Id. He decided to see if he could live on unemployment. Id.

At age 58 Claimant decided to retire because he felt he would not be able to return to the work force. Id. Claimant testified he did not plan to retire early, and he lost benefits by retiring early. Id. Claimant did not look for other work from his union since his retirement. R.R. at 167a.

Claimant testified he did not seek medical treatment for his work injury between 1992 and 2001 because he did not have insurance, although he testified his symptoms never abated since the injury. F.F. No. 5. Claimant testified he never told any subsequent employer he was having pain relating to his work injury. Reproduced Record (R.R.) at 149a.

Claimant operates a small radiator shop out of his home. F.F. No. 5. Claimant testified the shop is a part-time job that does not involve any overhead lifting. Id. Claimant does not advertise the business but gets customers through word of mouth and business cards. F.F. No. 7. At a hearing before the WCJ, Claimant testified he started the radiator shop in January 2001 and earned $2,000.00 between January and May 2001. F.F. No. 5. However, at his later deposition, Claimant testified he began working in his radiator

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4, 2051–2626.

shop in 1992, and never made more than $800 per year from the radiator shop. F.F. No. 7; R.R. at 162a–64a. Claimant keeps no records of the business, and never reported his income from the radiator shop to any taxing authority. F.F. No. 7.

Claimant testified he hurt his knee in 2000 while installing a ceiling in his home. F.F. No. 7; R.R. at 182a. Claimant stated the overhead work he did was minimal, and the ceiling panels were very light. *Id.*; R.R. at 182a–83a.

In 2001, Claimant went to Alexander R. Vaccaro, M.D., a board-certified orthopedic surgeon, because of worsening pain. F.F. Nos. 5, 7. This doctor testified he diagnosed Claimant with cervical myelopathy with radiculopathy caused by his work-related injury. F.F. No. 6. Claimant's range of motion was depressed, and an MRI showed slightly more exaggeration of disc herniation than evident on a 1999 CAT scan. *Id.*; R.R. at 45a–46a. Claimant reported worsening pain in the three weeks before the initial visit. F.F. No. 6.

Dr. Vaccaro testified he was unaware of Claimant's employment history, including Claimant's position before or after the injury and when Claimant returned to work. *Id.* The doctor did not recall what Claimant told him about his symptoms between 1992 and 1999. *Id.* Dr. Vaccaro acknowledged Claimant had pre-existing spondylosis (degenerative changes) in his neck prior to 1991. *Id.*; R.R. at 66a.

Dr. Vaccaro opined Claimant could not perform the type of overhead work of his pre-injury job without undue pain and dysfunction. F.F. No. 6. Although Claimant

and his doctor discussed surgery as an option, the doctor gave Claimant no treatment. R.R. at 150a–51a.

The WCJ found Claimant's testimony credible that he intended to retire from the workforce in 1998 based on Claimant's admission that he did not look for any work since that time. F.F. No. 8. However, the WCJ found the remainder of Claimant's testimony not credible, based on the inconsistencies and the lack of medical evidence supporting his contention that he retired due to his work injury. *Id.* The WCJ also found Dr. Vaccaro not competent or credible, because Dr. Vaccaro based his opinions solely on Claimant's reported history rather than medical evidence. F.F. No. 9.

Of primary significance here, the WCJ found Claimant voluntarily retired from the work force in 1998, not due to Claimant's 1992 work-related injury. F.F. No. 10. Accordingly, the WCJ denied Claimant's Petition. WCJ Conclusion of Law No. 2.

The Workers' Compensation Appeal Board (Board) affirmed the WCJ's decision, finding the WCJ did not capriciously disregard Claimant's evidence and Claimant failed to demonstrate he was forced to retire due to his work injury. This appeal followed.[2]

Claimant argues: 1) the WCJ's rejection of Claimant's testimony was arbitrary and irrational in violation of Section 422(a) of the Act; and 2) no evidence supports the WCJ's finding that Claimant voluntarily retired, because Employer failed to rebut

---

2. This Court's review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether the Board's procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. Section 704 of the Administrative Agency

Law, 2 Pa.C.S. § 704; *Bey v. Workers' Comp. Appeal Bd. (Ford Elecs.)*, 801 A.2d 661 (Pa. Cmwlth.2002). We must also determine whether the WCJ capriciously disregarded competent evidence. *Armitage v. Workers' Comp. Appeal Bd. (Gurtler Chem.)*, 842 A.2d 516 (Pa.Cmwlth.2004).

the presumption that Claimant's loss of earning power was due to his work injury.

■ Initially, we note Claimant did not raise the issue that the WCJ's decision was arbitrary and irrational in violation of Section 422(a) of the Act before the Board; accordingly, that issue is waived. *Nabisco Brands, Inc. v. Workers' Comp. Appeal Bd. (Tropello)*, 763 A.2d 555 (Pa.Cmwlth. 2000).

■ Claimant next argues, because he returned to work with restrictions under a suspension of benefits and was subsequently laid off, he is entitled to a presumption that his disability was causally related to his work injury. Therefore, he argues, since Employer did not present any evidence to rebut that presumption, he is entitled to benefits.

■ When a claimant seeks to lift a suspension of benefits, he must demonstrate that, while his disability has continued, his loss of earnings has recurred. *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301 (1990). A claimant laid off under these circumstances, without more, would be entitled to a presumption that his loss of earning power is related to his work injury. *McKay v. Workmen's Comp. Appeal Bd. (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth. 1997).

■ However, Claimant's argument fails to take into account his testimony that he retired. Voluntary retirement is an important fact which impacts required proof. When a claimant with an established right to benefits seeks to continue them after retirement, that claimant, "must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." *Southeastern Pennsylvania Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson)*, 543 Pa. 74, 79, 669

A.2d 911, 913 (1995). In other words, after retirement it is a claimant's burden to demonstrate his absence from the labor market is involuntary. *See Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Petrisek)*, 537 Pa. 32, 38, 640 A.2d 1266, 1270 (1994) (claimant who offered no evidence that he was forced into compulsory retirement due by his disabling occupational disease, not entitled to benefits).

*Henderson* is instructive on this issue. The claimant received workers' compensation disability benefits for years. However, when it became apparent that he also began receiving Social Security retirement benefits and pension benefits, a referee suspended benefits as of the date pension payments began. Ultimately, our Supreme Court agreed that benefits should be suspended. It stated, "It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement." *Henderson*, 543 Pa. at 79, 669 A.2d at 913. The Court specifically placed the burden of proof on the claimant to show he is seeking employment after retirement or that he was forced into retirement by his work-related injury. *Id.*

Claimant here is in a similar position to the claimant in *Henderson*. In both cases, a right to workers' compensation disability benefits was established. In neither case was the right terminated. As in *Henderson*, Claimant cannot utilize the previous establishment of causation of disability after retirement. Rather, Claimant must prove that he sought work after retirement or that he was forced into retirement by his work-related injury.

Here, Claimant did not seek employment after his retirement. Therefore, he was required to show that he was forced to retire due to his work-related injury. Because Claimant's proof on the cause of

retirement was rejected by the WCJ, he cannot prevail.

Claimant argues there is no evidence to support a finding other than that he was forced to retire due to his work injury. He asserts his testimony and that of his doctor support this finding and no other, and the WCJ was incorrect in capriciously disregarding those testimonies.

 A claimant may establish through his own testimony his motivation to retire. *Scalise Indus. v. Workers' Comp. Appeal Bd. (Centra)*, 797 A.2d 399 (Pa.Cmwlth.2002). However, the WCJ was not required to accept the uncontested testimony by Claimant or any other witness. *Newcomer Prod. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69 (Pa. Cmwlth.2003). The WCJ is the ultimate finder of fact, and has exclusive province over witness credibility. *Id.* The WCJ is free to accept or reject the testimony of any witness, including medical witnesses, and is not required to accept even uncontradicted testimony. *Id.*

 Moreover, the WCJ did not capriciously disregard the testimony of Claimant and his doctor. Capricious disregard occurs when the fact-finder deliberately ignores relevant, competent evidence. *Armitage*, 842 A.2d at 519; *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). Here, the WCJ did not ignore any of the evidence presented by Claimant. Rather, he chose not to believe it, and he explained his decision.[3]

It was reasonable for the WCJ to reject Claimant's testimony that he was forced to retire because he could not find work in a light-duty capacity not involving overhead work. Circumstances supporting the rejection include the availability of appropriate work with various employers prior to Claimant's retirement and Claimant's failure to seek work after he was laid off from his final position. R.R. at 22a.

Since the WCJ was free to reject the uncontradicted testimony of Claimant and his doctor, and he did so for specific, articulated reasons, the Board was correct in finding the WCJ did not capriciously disregard evidence. Claimant had the burden to demonstrate his retirement was due to his work-related injury. He failed to do so. Accordingly, the Board did not err, and we affirm.

## ORDER

AND NOW, this 17th day of May, 2004, the order of the Workers' Compensation Appeal Board is affirmed.

---

3. In not crediting Claimant's testimony, the WCJ noted that no medical evidence supports Claimant's assertion that he retired due to his work injury; that Claimant did not visit a doctor for cervical pain from 1992 to 2001; that Claimant gave conflicting testimony with respect to his earnings with his radiator business; and that Claimant did not report any of his income from the radiator business to any taxing authority. F.F. No. 8. In rejecting Dr. Vaccaro's testimony, the WCJ noted Dr. Vaccaro did not rely on objective medical evidence, but rather Claimant's reported history, regarding Claimant's original injury; Dr. Vaccaro did not possess any of Claimant's medical records prior to March 2001 other than one CAT scan; and Dr. Vaccaro was not familiar with Claimant's work history.