IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph Pettine,                          :
                    Petitioner          :
                                        :    No.  372 C.D. 2018
          v.                            :
                                        :    Submitted:  July 6, 2018
Workers' Compensation Appeal            :
Board (Verizon Pennsylvania LLC),       :
                    Respondent          :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 8, 2018


          Ralph Pettine (Claimant) petitions this Court for review of the February

22, 2018 order of the Workers' Compensation Appeal Board (Board), which, among

other things, affirmed the decision and order of a workers' compensation judge (WCJ)

denying Claimant's review petition and granting the modification petition filed by

Verizon Pennsylvania LLC (Employer).[1]

          Claimant worked for Employer as a splicing technician for 35 years,

during which time he climbed poles and entered manholes to install or repair phone

cables and systems.  On February 26, 2015, at the age of 56, Claimant was struck by

_____

[1] The WCJ also granted Claimant's claim petition for disfigurement, *i.e.*, a surgical scar
running down his chin to the neck, and ordered Employer to pay 40 weeks of specific loss benefits.
Employer did not contest this aspect of the WCJ's order on appeal to the Board, *see* Board's decision
at 1 n.1, and does not do so before this Court.

an automobile while marking a road for Employer. On March 11, 2015, Employer issued a notice of compensation payable (NCP), accepting injuries for a "contusion/laceration" and fractures to the left tibia, "left lower face," and sternum. (Reproduced Record (R.R.) at 2a.) On November 20, 2015, Employer filed a modification petition, in which it alleged that it offered Claimant specific jobs that were within his physical restrictions, vocational background, and geographic area. On March 16, 2016, Claimant filed a review petition, in which he sought to amend the NCP to add cervical, back, and shoulder injuries to the description of his injury. (R.R. at 6a-17a.) The material allegations of the modification and review petitions were denied by the opposing party, and the petitions were assigned to a WCJ, who conducted hearings.

In support of its modification petition, Employer presented two Notices of Ability to Return to Work dated August 10 and November 10, 2015. These notices showed that David Raab, D.O., Claimant's treating orthopedic surgeon, and William H. Spellman, M.D., an orthopedic surgeon who performed an independent medical examination, concluded that Claimant is capable of returning to work in a sedentary position with a restriction that he not stand for a period longer than 15 minutes. In his deposition testimony, James Andrews, a Senior Analyst in Absence Administration for Employer, stated that he authored and sent Claimant letters on December 7, 2015, and December 23, 2015. In these letters, Andrews offered Claimant sedentary positions with Employer, the requirements of which were consistent with the above restriction and involved sitting while using a computer and phone. Andrews testified that Claimant did not accept the job offers, failed to contact him after the letters were sent, and did not provide any medical notes stating that he could not work. Andrews said

2

that the jobs were located approximately 30 minutes from Claimant's home. (R.R. at 4a-8a; WCJ's Finding of Fact (F.F.) No. 7b-c.)

On cross-examination, Claimant stated that he did not accept the sedentary jobs because Employer advised him that he needed to use his accumulated vacation time before it would expire in October, and that he took a six-week vacation which ended around February 2015. Claimant testified that, during this time, he did not travel anywhere and focused on doing therapy for his back, neck, and shoulder. According to Claimant, he did not accept the job offers as he was on vacation, but believes that he could have performed the jobs as of December 23, 2015. Claimant testified that he returned to work in the first week of February for a few days and performed a sedentary position; however, he could not continue due to stiffness in his back. Significantly, Claimant admitted that this sedentary position was not one of the jobs that Employer had previously offered in the letters via Andrews. (F.F. No. 9.)

Employer also presented the deposition of Dr. Spellman. In his testimony, Dr. Spellman recounted that Claimant's fractured tibia had been repaired surgically with a medullary rod inserted by Dr. Raab and noted that Claimant had received the necessary treatment for his facial laceration and fracture. Dr. Spellman concluded that Claimant was medically and physically capable of performing the sedentary work offered by Andrews and could also return to his regular full-time job. Dr. Spellman stated that, from a medical standpoint, it could not reasonably be expected that Claimant could sustain notable injuries to his neck and back seven or eight months following the motor vehicle accident, and he discounted the notion that Claimant sustained an injury to his shoulder as result of using crutches and a cane after the accident. Dr. Spellman testified that Claimant, at worst, has low-grade impingement tendinitis of the right shoulder, and he explained that this condition commonly occurs

3

in men of Claimant's age without injury or trauma. Dr. Spellman further testified that his examination was negative for a physical problem with Claimant's neck or back and opined that the issues with Claimant's discs and lumbar spine, as reflected on MRI films, were degenerative in nature, taking years to develop. (F.F. No. 10.)

In support of his review petition and in opposition to the modification petition, Claimant submitted the deposition of Sanjay Madnani, M.D., who practices internal medicine and pain medicine. Dr. Madnani testified that he initially examined Claimant on November 18, 2015, obtained a medical history from Claimant, and reviewed MRIs and EMG studies. Ultimately, Dr. Madnani diagnosed Claimant with lumbar radiculopathy, lumbar disc displacement, lumbar spondylosis, cervical radiculopathy, and cervical disc displacement. Dr. Madnani noted that Claimant did not have back or neck pain before the vehicular accident and determined that the accident caused these injuries. Dr. Madnani stated that Claimant cannot perform sedentary work because he is in a lot of pain and is unable to sit for any period of time. (F.F. No. 11.)

Claimant also submitted the deposition of David Glaser, M.D., an orthopedic surgeon who specializes in the shoulder area. Based on a physical examination and Claimant's medical history, Dr. Glaser was of the opinion that Claimant has post-traumatic arthritis of the shoulder with a partial undersurface tear of the rotator cuff and a degenerative labral tear. According to Dr. Glaser, the arthritic condition, although a preexisting injury, was aggravated by the vehicular accident, and the tears are causally related to the weight that Claimant had to bear while using crutches. Dr. Glaser also testified that he agreed with Dr. Spellman that Claimant has impingement tendinitis of the right shoulder. Dr. Glaser stated that the restrictions on the sedentary jobs did not address the shoulder and said that he would need to know

4

more about the jobs and their duties in order to comment on whether they would be feasible for Claimant. (F.F. No. 12.)

Claimant testified at a hearing and documented his time and regular job duties with Employer. In discussing the effects of the vehicular accident, Claimant stated that he had surgery on his left leg; afterward, he was off his feet for two months and used a walker for one month, followed by crutches for two months, and then a cane for two to three months. Claimant said he noticed symptoms in his cervical spine and back shortly after the accident and assumed that the injuries were bruises that would resolve through time. Claimant testified that he started treatment for his cervical spine around November 2015 with a chiropractor, but the therapy did not yield improvement, and he receives injections from Dr. Madnani. Claimant further testified that he noticed symptoms in his right shoulder when he started using crutches and felt pain in his shoulder when he placed his weight on the crutches. Claimant confirmed that he did not return to work after receiving the job offers from Andrews for a sedentary position because he was using vacation time that was scheduled to expire in the then near future. Claimant does not believe that he could ever return to his pre-injury job and feels that he cannot perform the tasks associated with the sedentary jobs that Andrews offered due to injuries to his back and neck. (F.F. No. 13.)

Reviewing the evidentiary record as a whole, the WCJ rejected, as not credible and unpersuasive, Claimant's testimony that his neck, back, and shoulder complaints and symptoms were work related. The WCJ further found that Andrews' testimony was more credible than Claimant's testimony and accepted the former as a matter of fact. (F.F. No. 15.)

Regarding the expert testimony presented, the WCJ found the testimony of Dr. Spellman more credible and persuasive than any contrary testimony of Drs.

5

Madnani and Glaser and rejected the testimony of Drs. Madnani and Glaser where that testimony was inconsistent or conflicted with that of Dr. Spellman. (F.F. No. 16.)

Based upon these credibility determinations and their associated factual findings, the WCJ concluded that Claimant failed to sustain his burden of proving that the NCP is materially incorrect and should be amended to add cervical, back, and/or shoulder injuries. The WCJ further concluded that Employer sustained its burden of proving that Claimant, without proper reason, rejected offers for a suitable job and, therefore, it was entitled to a modification of Claimant's benefits. (WCJ's Conclusions of Law Nos. 2-3.) Accordingly, the WCJ denied Claimant's review petition and granted Employer's modification petition.

Claimant then appealed to the Board, which affirmed. In doing so, the Board concluded that the WCJ issued a reasoned decision in accordance with section 422(a) of the Workers' Compensation Act (Act),[2] 77 P.S. §834, and dismissed Claimant's arguments as impermissibly attacking the WCJ's credibility and weight determinations.

Before this Court,[3] Claimant first argues that the WCJ erred in denying his review petition because the WCJ's findings and credibility determinations are incoherent, inconsistent, and disregarded conclusive evidence. We disagree.

Pursuant to the Act, a WCJ may grant a review petition and amend the NCP to include additional injuries if a claimant can carry the burden of proving, with competent and credible evidence, that these injuries subsequently arose as a

_____

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

6

consequence of the original injury and are work related. *Harrison v. Workers' Compensation Appeal Board (Auto Truck Transport Corporation)*, 78 A.3d 699, 704 (Pa. Cmwlth. 2013); *see* Section 413(a) of the Act, 77 P.S. §771. Importantly, the WCJ has the power to assess credibility and evidentiary weight, and is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Unless made arbitrarily or capriciously, a WCJ's credibility determination is unassailable on appeal. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). Nonetheless, a WCJ must issue a "reasoned decision" that adequately explains the reasons for rejecting or discrediting competent evidence when conflicting evidence is presented. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003); *see* 77 P.S. §834.

Claimant contends that the WCJ erred in failing to find that he sustained low-grade impingement tendinitis in the right shoulder, and that it was a work-related injury, because both Employer's expert, Dr. Spellman, and Claimant's expert, Dr. Glaser, agreed that Claimant developed this medical condition.

However, in making this argument, Claimant overlooks the fact that the WCJ found that he did not sustain a right shoulder injury in the course of his employment or related thereto, (F.F. No. 20), which is a necessary showing in order for Claimant to add new injuries in a review petition proceeding. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 217-18 (Pa. Cmwlth. 2006). Although the experts agreed that Claimant had low-grade impingement tendinitis, the WCJ credited the testimony of Dr. Spellman that this particular type of injury is most likely caused through the aging process, (F.F. No. 10j),

7

specifically finding that the condition "occurs without trauma." (F.F. No. 17.) As such, the WCJ determined that the testimony of Dr. Glaser was not persuasive enough to support granting the review petition and found that Claimant failed to sustain his burden of proof. (F.F. Nos. 16-17.) Because the WCJ's factual findings are consistent, and the WCJ adequately explained her credibility determinations with respect to Claimant's failure to establish that low-grade impingement tendinitis was a work-related injury, *see Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76-78 (Pa. Cmwlth. 2012), we conclude the WCJ did not commit legal error.

Next, Claimant contends that the WCJ erroneously made a credibility determination against him based upon the fact that he did not start treatment for his "neck and back immediately after the February 2015 incident." (Claimant's brief at 21.) Claimant asserts that he testified "credibly and consistently" that he had problems with these areas immediately after the incident, and the conditions progressively got worse. *Id.*

However, the WCJ rejected Claimant's testimony as not credible. In doing so, the WCJ cited Claimant's demeanor while testifying, (F.F. No. 15), and this, alone, satisfies the requirement for a reasoned decision. *See Daniels*, 828 A.2d at 1052-53. The WCJ further noted that Claimant did not report any complaints of neck or back problems to Dr. Spellman on July 23, 2015, pointing out that there were no findings or symptoms relative to his back or neck or documented in the medical records on that date. (F.F. No. 15b-d.) Ultimately, the WCJ accepted Dr. Spellman's testimony that it is highly unusual for an individual to sustain neck or back pain seven to eight months following the type of injuries that Claimant sustained in the accident and discredited any expert testimony to the contrary. (F.F. No. 10i.) Based on this record, we cannot

8

conclude that the WCJ made a credibility determination that was arbitrary, capricious, or lacked an objective rationale.

In his final argument with respect to the review petition, Claimant contends that he suffered neck injuries because Dr. Madnani's testimony was credible and supported by diagnostic imaging, while Dr. Spellman failed to appreciate or account for the neck injuries. This argument is contrary to the record and mischaracterizes the WCJ's findings. Besides finding the testimony of Dr. Madnani to be not credible, (F.F. No. 16), the WCJ accepted Dr. Spellman's opinion that the MRI films depicted neck injuries that are degenerative in nature and developed over a period of time. (F.F. No. 10p, s.) The WCJ also accepted Dr. Spellman's opinion dismissing the results of the EMG studies as being "replete with false positives." (F.F. No. 10r.) It is irrelevant whether substantial evidence exists to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The expert testimony of Dr. Spellman constitutes substantial evidence for the WCJ to find that Claimant did not sustain work-related neck injuries and, also, provided the WCJ with a sufficient, articulable basis to reject the conflicting testimony of Dr. Madnani. *See Amandeo*, 37 A.3d at 76-78.

Hence, we must conclude that the Board did not err in affirming the WCJ's denial of the review petition. We now address Claimant's arguments challenging the WCJ's grant of Employer's modification petition.

In a modification proceeding, where, as here, the employer establishes that a claimant's condition has changed and the claimant has been referred to a then open job that he is capable of performing, the burden shifts to the claimant to demonstrate that he responded to the job offer in good faith. *Associated Plumbing & Heating v.*

9

*Workmen's Compensation Appeal Board (Hartzog),* 560 A.2d 865, 869 (Pa. Cmwlth. 1989). If the claimant fails to make such a showing, a WCJ may modify benefits. *Id.*; *see Muretic v. Workers' Compensation Appeal Board (Department of Labor and Industry)*, 934 A.2d 752, 757 (Pa. Cmwlth. 2007).

Claimant asserts that the WCJ engaged in a "mean-spirited view" when she found that Claimant improperly declined the job offers from Andrews because he was on vacation. (Claimant's brief at 27.) To the contrary, the WCJ, aside from basing her credibility determination on Claimant's demeanor while testifying, specifically found that Claimant's testimony regarding his vacation time was "inconsistent and not credible" because:

> [A]t the time of the job offer, Claimant was not working and was receiving workers' compensation benefits raising the question of how can one take vacation time when one is not working. Moreover, there is no medical evidence of record that restrict[ed] Claimant from working due to the need for therapy for his leg. Claimant's failure to return to work after receipt of the job offer letters was not in good faith.

(F.F. No. 24.) Moreover, based upon the uncontroverted evidence, the WCJ found that Claimant did not respond to the job offers for a sedentary job and declined to accept them. (F.F. Nos. 7d-e, 9d.) We discern no error in these findings or credibility determinations and Claimant has not provided a legitimate basis upon which to disturb them.

Claimant also argues that the WCJ should have denied the modification petition because he could not work the offered jobs due to "his neck and back issues," which "should have been added to the description of injury through [the] review petition." (Claimant's brief at 28.) This assertion fails because it is entirely predicated on the success of Claimant's previous contentions. As noted by the Board, the "neck and back injuries were not accepted by [Employer] and were not added to the

10

description of injury by the review petition." (Board's decision at 9.) Having already concluded that the WCJ did not err in denying Claimant's review petition, we conclude that this argument lacks merit.

Finally, Claimant asserts that his "credible testimony alone is sufficient to warrant denial of [the modification petition], including his unrefuted testimony that he did in fact try to go back but was unable physically to do even sedentary work at that time." (Claimant's brief at 30.) To reiterate, the WCJ found the testimony of Claimant not credible and, as factfinder, the WCJ is not required to accept even uncontradicted testimony. *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997, 1002 (Pa. Cmwlth. 2004). Furthermore, Claimant admitted that the sedentary position that he worked after the accident was not one of the jobs that Andrews offered. (F.F. No. 9.)

Hence, we conclude that the WCJ did not err in granting Employer's modification petition.

Accordingly, because Claimant's arguments have failed to prove that the WCJ erred, we must affirm the Board's order affirming the WCJ.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in this case.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph Pettine, : 
              Petitioner : 
            :   No. 372 C.D. 2018
          v. : 
            : 
Workers' Compensation Appeal : 
Board (Verizon Pennsylvania LLC), : 
          Respondent : 

## ***ORDER***

AND NOW, this 8th day of August, 2018, the February 22, 2018 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge