IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas E. Linke,                          :
                                          :
                   Appellant              :
                                          :
            v.                            : No. 863 C.D. 2023
                                          : Submitted: November 7, 2024
Hilltown Township Zoning Hearing          :
Board; Charles Smith and Donna            :
Smith; Joseph Monzo and Shannon           :
Monzo; William Crane and Nan Crane;       :
Kevin Craun; William and Penny            :
Jaxheimer; and Susan Bonino,              :
individually and as the Hilltown          :
Neighbors Association                     :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  December 17, 2024


            Thomas E. Linke (Landowner) appeals from a decision of the Court of

Common Pleas of Bucks County (trial court) affirming the decision of the Hilltown

Township Zoning Hearing Board (ZHB).[1]  On appeal, Landowner argues, *inter alia*,

            [1] Charles Smith and Donna Smith (the Smiths), Joseph Monzo and Shannon Monzo,
William Crane and Nan Crane, Kevin Craun, William and Penny Jaxheimer, and Susan Bonino
are joined in this action individually and as the Hilltown Neighbors Association.  They are referred
to collectively as the Neighbors.  Additionally, before the trial court, Hilltown Township
intervened on behalf of the ZHB.  The ZHB has indicated that other than filing the Reproduced
Record, the ZHB has not participated in the instant appellate proceedings.  Consequently, the ZHB
has declined to file a brief in the matter, opting to rely on Hilltown Township's brief.

that Hilltown Township (the Township) is equitably estopped from enforcing the Zoning Enforcement Notice (Notice) based on assurances offered by Township officials in 1988. We affirm.

Landowner is the property owner of two parcels located in the Township. Landowner bought the first parcel at 2118 Hilltown Pike on April 11, 1988, and thereafter purchased the neighboring parcel at 2112 Hilltown Pike (collectively, the Property) in 2001. As the trial court observed, "[t]he Property is zoned into two separate districts, Village Center (hereinafter 'VC') and Rural Residential (hereinafter 'RR')." Trial Court's Op., 7/24/23, at 2. From the Property, Landowner operates two businesses, L&M Paving, LLC, and Linke Enterprises, LLC, through which he engages in nursery, landscaping, paving, excavating, and accessory storage of topsoil, fill dirt, and rock materials. Landowner has operated his landscaping contracting business since 1988 and believes he began his paving services roughly a year or so after that. Over the years, Landowner has invested roughly $2.5 million dollars into his businesses for purposes of maintenance and expansion.[2] In 2020, Landowner purchased a company called Jones Topsoil. Upon purchase of Jones Topsoil, Landowner began screening topsoil on the Property, rather than on job sites as he had done in the past. The trial court observed that this change in the use of the Property appears to coincide with the beginning of the Neighbors' complaints. Trial Court's Op. at 11-12.

Per Landowner's testimony, while considering whether to purchase 2118 Hilltown Pike, the Township indicated to Landowner that he could operate a landscaping business from the Property. ZHB's Hearing, Notes of Testimony (N.T), 11/18/21, at 74. In any case, "[t]here was no testimony that [Landowner] specifically

---

[2] The trial court observed that Landowner failed to present documentation to confirm this amount. Trial Court's Op. at 5.

asked about operating an A-2 Nursery from the Property, which would later constitute the main non-conforming use of the Property under the 1983 Zoning Ordinance at the time; an incidental landscape business would have been an accessory use to the Nursery under the Zoning Ordinance at the time." Trial Court's Op. at 3. Landowner believes that the Township had to be aware of the extent of his business activities because he did work for various Township officials over the years, including "[t]he water and sewer authority, a couple of the board of supervisors, a [T]ownship manager, [and] the chief of police."

However, beginning in either 2019 or 2020, the Smiths began complaining about Landowner's use of the Property and Zoning Officer Dave Taylor investigated the complaints.[3] In his response to the complaint, Officer Taylor wrote, in part, that:

> Prior to 2007, the 1995 [] Township Zoning [Code] permitted a Landscaping Contracting business in conjunction with a (zoning use) A2, Nursery. [Landowner] established his nursery well before 2007 (I believe prior to 1990) . . . .
>
> In recent weeks, I have discussed with the [T]ownship [S]olicitor differentiating between 'Landscaping' and 'Excavating,' and I understood the Solicitor's response to allude to this being a fight that other jurisdictions had not necessarily been successful in fighting. While I understand your frustration, and also the idea that there should be a measure of 'intensity,' there was nothing in the ordinance that defined the level of permitted activity, not that specifically defined what 'Landscaping' was.

---

[3] For example, Chuck Smith testified, and introduced photographic evidence, that the piles of soil have grown much larger and taller than in the past and now exceed the size of a single family home; that these piles abut his property; and that the expansion of the topsoil business has resulted in increased "noise, dust, and dirt" coming from the Property. *See* ZHB's Adjudication, Findings of Fact (F.F.), Nos. 50-64.

3

Reproduced Record (R.R.) at 37a-38a (underlined in original). Thus, Officer Taylor opined that, with the exception of the use of a concrete crusher, Landowner's use of the property was not illegal as it had been "grandfathered" in under the previous zoning code and could continue as a legally non-conforming use. *Id*. at 39a.

The Smiths did not appeal this determination, because, upon obtaining counsel, the Smiths did not believe Officer Taylor's opinion to be a binding decision from the Township. Still, the Smiths, as well as other Neighbors, continued to complain regarding Landowner's use of the Property, including multiple calls to the police, contacting the Department of Environmental Protection, and direct communication to Landowner.

The record indicates that Landowner submitted an application to include the Property in the Township's Agricultural Security Area (ASA) to the Township Planning Commission (Commission) which culminated in the public discussion of Landowner's use of the Property at a meeting held on May 3, 2021. *See* R.R. at 66a-75a. In some form or another, the Neighbors commented that Landowner's use of the Property was not always so disruptive. *Id*. at 72a-73a. One of the Neighbors, Penny Jaxheimer, commented that "[s]he never had a problem with [Landowner] in 32 years except for the last 2 years, all of this is new, they can hear it all the time [and] they do not want to stop him from making a living but to go back to the way it was." *Id*. at 73a. In relevant part, Landowner stated that he roughly uses the Property as follows: 10% nursery, 40% topsoil business, and 50% asphalt business. *See* R.R. at 68a; *see also* ZHB's Hearing, N.T., at 91. The Commission ultimately recommended to deny the application citing the complex nature of the zoning questions involved. In fact, one commissioner commented that

4

the Property could not be included in the ASA because the ASA does not permit zoning non-compliance. *Id*. at 74a.

Thereafter, Zoning Officer Mark Sarson began investigating Landowner's use of the Property and issued the Notice dated September 7, 2021.[4] Officer Sarson disagreed with Officer Taylor's earlier assessment and determined that Landowner's use of the Property constituted three violations of the Township's Zoning Ordinance (Zoning Code): (1) G-5 Contracting;[5] (2) H-1 Manufacturing;[6] and (3) H-9 Outside Storage.[7] Landowner filed a timely appeal of the Notice to the ZHB and the Neighbors intervened in the action.

---

[4] Officer Sarson visited the Property three times and observed two topsoil screeners, "piles of materials being stored upon the Property [that] were probably as high as a two-story house," and that the piles were not properly shielded from abutting rights-of-way[] or neighbors. Officer Sarson failed to observe "any type of nursery activities" except for an area of trees. *See* ZHB's Adjudication at F.F. Nos. 12-30.

[5] The Notice indicates that G-5 Contracting is not a permitted use in either the RR or in relevant VC Zoning Districts. In pertinent part, Article V, §160-23.G(5) of the Township's Zoning Code defines excavating as: "Excavating, building, cement, masonry, painting, roofing, siding, landscaping, paving, HVAC, or uses of similar nature." *See* Notice, 9/7/21, at 1.

[6] Similarly, the Notice states that H-1 Manufacturing is not a permitted use in either the RR or VC Zoning Districts. Article VI, §160-23.H(1) of the Township's Zoning Code defines manufacturing as: "Manufacturing, including the production, processing, cleaning, testing, and distribution of materials, goods, foodstuffs, and products including asphalt and concrete." *See* Notice at 2.

[7] Finally, the Notice indicates that H-9 Outside Storage is not a permitted use in either the RR or VC Zoning Districts. Article IV, §160-23.H(9)(d)-(e) of the Township's Zoning Code provides:

> Outdoor storage is a primary use of the land, not including a junkyard or auto salvage, and subject to the following additional provisions:

* * *

**(Footnote continued on next page…)**

In his initial appeal to the ZHB, Landowner asserted that his use of the Property was "permitted as an expansion of the existing legal non-conforming A-2 Nursery Use upon the Property and in the alternative that the Township was equitably prohibited from preventing these activities taking place upon the Property. ZHB's Adjudication, 12/31/21, at 9. In support thereof, Landowner testified as to the establishment of his non-conforming use, offered the deeds relevant to the Property, Officer Taylor's August 2020 letter, and a 1989 reprinting of the 1983 Township Zoning Code. The ZHB observed that Landowner "failed to present any sort of permits issued by the Township establishing when these various activities were commenced upon the Property, as well as confirming that the commencement of these activities was in conformance with the zoning regulations enacted at that time." *Id*. at 10. Yet, because neither the Township nor the Neighbors challenged the existence of a legally non-conforming nursery, the ZHB assumed that the nursery was a legally non-conforming use. *Id*.

On that point, Landowner's proffered evidence of the 1983 Township Zoning Code provided:

> Nursery uses, including the growing of trees, ornamentals, shrubs, flowers, vegetables, with or without retail sales or greenhouses. **A landscape business will be permitted as a secondary and incidental use to the Nursery**. Not more than three (3) percent of the total lot area shall be in impervious surfaces.

---

(d) Storage areas shall not exceed a height of eight feet.

(e) Storage areas shall be shielded from view from all public streets and residential uses.

*See* Notice at 2-3; R.R. at 5a-6a.

6

*See* ZHB's Adjudication at 10; *see also* R.R. at 36a (emphasis added). Because the doctrine of a legal non-conforming use does not allow such a use to morph into or establish an entirely new or different use, and because Landowner's own testimony at the hearing confirmed that the nursery only constituted roughly 10% of his business, the ZHB concluded that the contracting, manufacturing and storage activities on the Property constituted the new and principal use on the Property. *See* ZHB's Adjudication at 11 (citing *Pietropaolo v. Zoning Hearing Board of Lower Merion Township*, 979 A.2d 969, 977 (Pa. Cmwlth. 2009)). Thus, the ZHB found that the doctrine of natural expansion was inapplicable here. *Id.* at Conclusions of Law (C.L.) at Nos. 10-12.

Still, Landowner believed he should be permitted to continue these uses because the Township's early assurances should bar enforcement of the Notice under a theory of equitable estoppel. The ZHB denied the appeal, opining in relevant part that "[Landowner] failed to show that the Township intentionally or negligently misrepresented any position regarding his activities upon the Property or that such position was made knowing that [Landowner] would rely on this misrepresentation." ZHB's Adjudication at 12; C.L. No. 14. The ZHB likewise rejected Landowner's argument regarding variance by estoppel, determining that "[Landowner] failed to present any evidence that any hardship caused by the upholding of this Notice would go beyond personal or economic hardship or would render the Property practically valueless." *Id.* at 13; C.L. No. 15.

On appeal to the trial court, Landowner abandoned his arguments pertaining to natural expansion of his legally non-conforming use and variance by estoppel. Instead, Landowner focused his appeal on his equitable estoppel claim, arguing that the Township's assurances at the time of Landowner's purchase created

a vested right in the new primary use of the Property. More particularly, Landowner viewed this Court's decision in *Victory Gardens, Inc. v. Warrington Township Zoning Hearing Board*, 224 A.3d 110 (Pa. Cmwlth. 2020), as "right on point." ZHB's Hearing, N.T., 11/18/21, at 161; Trial Court's Op. at 20. The trial court disagreed. In its view, "[i]n regard to the initial element of a claim of equitable estoppel, [Landowner] did not present clear, precise, and unequivocal evidence that [the] Township intentionally or negligently misrepresented its position regarding the zoning allowed on [Landowner's] Property." Trial Court's Op. at 22. The trial court observed that Landowner failed to identify, let alone present the testimony of the representative who assured him that paving or excavating could become the primary use of the Property. *Id.* at 23. Even so, the trial court noted that, insofar as Landowner argued the Township acquiesced to this use of the Property, that is only true of the smaller parcel which he bought in 1988, *i.e.*, Landowner does not allege any such acquiescence for the much larger parcel purchased in 2001. *Id.*

Additionally, the trial court reasoned that Landowner could not have relied on Officer Taylor's August 2020 opinion letter to the Smiths, because Landowner's use of the Property had changed and expanded for nearly 32 years before Officer Taylor's investigation and because the letter was only ever sent to the Smiths. Trial Court's Op. at 25-26 (citing *Hosford v. Zoning Hearing Board of Penn Township*, 533 A.2d 198 (Pa. Cmwlth. 1987)). The trial court likewise disagreed that the ZHB capriciously disregarded Officer Taylor's letter. Rather, the trial court believed the ZHB squarely addressed the probative value of the letter by concluding Officer Taylor's letter pertained to zoning changes which occurred in 2007, but not earlier, and failed to explain the change in the Zoning Code that occurred which eliminated landscaping as an accessory use to a nursery. *Id.* at 28-30. Similarly, the

8

ZHB noted that Landowner failed to introduce testimony by Officer Taylor to further explain his initial determination. *Id*. Thus, the trial court affirmed the ZHB's adjudication.[8]

On appeal to this Court,[9] Landowner presents two issues for our review: (1) whether the trial court and ZHB erred by concluding that Landowner lacked a vested right to continue his use of the Property under a theory of equitable estoppel; and (2) whether the trial court and ZHB capriciously disregarded Officer Taylor's August 18, 2020 letter to the Smiths. We agree with the well-written opinion of the trial court.

Preliminarily, absent "a variance granted by a relevant zoning authority, individuals in the Commonwealth may acquire a right to continue a use that is otherwise not permitted under a number of different, equity-based legal theories including equitable estoppel." *Victory Gardens*, 224 A.3d at 1115 (citing *Lamar Advantage GP Co. v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010)). However, equitable estoppel is only granted under extraordinary circumstances. *Id*. Under this theory, landowners must prove that "the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the

___

[8] Pending this appeal, Landowner filed an Application for Stay in this Court. *See Linke v. Hilltown Township Zoning Hearing Board* (Pa. Cmwlth., No. 863 C.D. 2023, filed December 20, 2023) (Ceisler, J.) (single-Judge op.). We denied, reasoning that Landowner was unlikely to succeed on the merits and that the Neighbors would suffer harm were we to grant the stay. *Id*. at 8-9.

[9] Where, as here, the trial court takes no additional evidence, our review is limited to determining whether the ZHB committed an error of law or an abuse of discretion. *Elizabethtown/Mt. Joy Associates L.P. v. Mount Joy Township Zoning Hearing Board*, 934 A.2d 759 (Pa. Cmwlth. 2007). This court may conclude that the ZHB abused its discretion only if its findings of fact are not supported by substantial evidence. *Id*. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

misrepresentation." *Lamar Advantage GP Co.*, 997 A.2d at 441. Moreover, the landowner must demonstrate that he engaged in the illegal or non-conforming use of his property in good faith, by proving: (1) he relied on the municipality's misrepresentation to his detriment, *e.g.*, by making substantial expenditures; (2) under the innocent belief that the use is permitted; and (3) "enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost." *Id.* (quoting *Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218, 224-225 (Pa. Cmwlth. 2008)). Critically, the landowner must establish these elements by clear, precise, and unequivocal evidence. *Pietropaolo*, 979 A.2d at 980.

Landowner argues that the 1988 assurance offered to Landowner by the Township serves as the misrepresentation required under our test for equitable estoppel. Brief of Appellant at 18. Landowner likewise posits that the Township had reason to know Landowner would rely on this misrepresentation, because the express purpose of Landowner's inquiry was to ascertain whether he could begin a landscaping contracting business on the Property. *Id.* In his view, the trial court and ZHB erred by failing to afford evidence of his conversation with Township officials proper weight, because "the fact of the 1988 representation has been corroborated by the Township through its actions and non-actions over the past 30 years and further confirmed in writing [in Officer Taylor's] Non-Conforming Use Determination." *Id.* at 19. Concerning his good faith, Landowner asserts that: (1) he has made substantial expenditures based upon the Township's misrepresentation by way of investing roughly $2.5 million into the Property over the course of nearly 30 years; (2) Landowner innocently believed that his use of the Property was legal, and that it stemmed from his inquiry with the Township; and (3) Landowner's

10

businesses would suffer extraordinary harm unless the Township is estopped from enforcing the Notice. *Id*. at 20. Moreover, as he did before the ZHB and the trial court, Landowner likens the instant case to *Victory Gardens* and urges this Court to reverse the trial court's decision accordingly. *Id*. at 18.

In pertinent part, the Township[10] responds that Landowner's arguments must fail because Landowner has fallen well short of his evidentiary burden. For example, the Township notes that the evidence of its purported misrepresentation is limited to Landowner's own testimony, which failed to identify the Township official who originally indicated that a landscaping contracting business was a permitted use for the Property, and that in all other respects, these purported communications were "uncorroborated." Township's Brief at 7. So too, evidence of Landowner's substantial expenditures, such as investing $2.5 million into the Property, is limited solely to Landowner's uncorroborated testimony.[11] *Id*. at 11. In the absence of an A-2 Nursery Permit for the Property or witness corroboration of the purported 1988 misrepresentation, the Township argues that Landowner has failed to establish his equitable estoppel claim by clear, precise, and unequivocal evidence. *Id*. at 12.

Furthermore, the Township views *Victory Gardens* as distinguishable from the matter *sub judice*, because it rejects Landowner's claim that it made any misrepresentation to Landowner at all, unlike the "repeated, continuous interactions" therein and because the scale of the non-permitted use in *Victory Gardens* was

---

[10] Because the Neighbors' arguments largely track those of the Township, we recount only the Township's arguments.

[11] In particular, the Township observes that evidence of this substantial expenditure is limited to ten words of testimony elicited at the ZHB's Hearing when asked how much money Landowner had invested into the Property: "I would probably say about two and a half million." Township's Brief at 11 (citing ZHB's Hearing, N.T., at 80).

11

drastically smaller than the non-permitted use here. Township's Brief at 14-15. On that point, the Township observes that the growth of the non-nursery uses in recent years betrays Landowner's argument that he undertook the expansion of these uses in good faith, unlike *Victory Gardens*. *Id*. at 18-20.

We have no difficulty concluding that Landowner's equitable estoppel claim must fail. First, we agree that, here, the Township's purported 1988 assurance cannot serve as a misrepresentation to support Landowner's claim that the Township must be equitably estopped from enforcing the Notice. At the ZHB's hearing, Landowner testified to the following:

> Q: How long have you operated your landscape contracting business on the [P]roperty?
>
> A: Since 1988.
>
> Q: So it's over 30 years?
>
> A: Yeah, about 34 years.
>
> Q. And when did you start doing paving services as part of your business?
>
> A. Probably a year after we moved in there . . . .
>
> Q: And approximately what year was that?
>
> A. That was probably '89, '90.
>
> Q. When you were first looking at buying these properties, did you go to the [T]ownship to discuss your proposed use of the [Property]?
>
> A. I did.
>
> Q. And what was your understanding as to whether you could operate your landscape contracting business on the [Property]?

12

A.  I could.

ZHB's Hearing, N.T., at 73-74.  This testimony, in tandem with earlier testimony wherein Landowner opined that paving is typically attendant to landscape contracting, is the extent of Landowner's evidence of the Township's purported misrepresentation.  *See id*. at 72.  However, as indicated by Landowner's own evidence, the Township's Zoning Code at the time permitted landscape contracting as only an *accessory* use to an A-2 Nursery.  To reiterate, the Code provided:

> Nursery uses, including the growing of trees, ornamentals, shrubs, flowers, vegetables, with or without retail sales or greenhouses.  **A landscape business will be permitted as a secondary and incidental use to the Nursery**.  Not more than three (3) percent of the total lot area shall be in impervious surfaces.

R.R. at 36a (emphasis added).

Taken together, Landowner's argument proves too much.  Even accepting Landowner's uncorroborated testimony as true, the most we can discern from it is that, at the time of Landowner's purchase of 2118 Hilltown Pike, the Township correctly represented that his landscape business would be permitted as a secondary and incidental use to an A-2 Nursery Permit.  Yet, based upon Landowner's own admissions, the landscape contracting business is the primary use of the Property and has continuously expanded to include paving and, as of 2020, topsoil storage.  We likewise consider Officer Taylor's letter a weak basis for an equitable estoppel claim.  Because the letter was not addressed to Landowner, we cannot agree that the Township misrepresented anything at all *to* Landowner, let alone with reason to believe he would rely upon it to his detriment.  Put simply, the proffered evidence is too scant to support an equitable estoppel claim.

13

Furthermore, we find Landowner's reliance on *Victory Gardens* unavailing. The landowners therein received explicit information from a township official that they could operate a mulching operation at their farm without a permit. *Victory Gardens*, 224 A.3d at 1116. Over the course of many years, the township repeatedly reaffirmed its mistaken belief that a mulching operation did not require a permit under the township's zoning code. *Id*. For example, the township publicly stated its belief that mulching was allowed on the landowners' farm at a Board of Supervisors' meeting. *Id*. at 1116-17. The township even went so far as to explicitly tell the landowners that their "mulching operation was 'right by Ordinance,' that [the landowners'] operation was allowed at the [f]arm, and that a mulching operation was allowed by right" under the township's zoning. *Id*. The township also "periodically both inspected and patronized" the landowners' mulching operation "without ever informing [the landowners] that the operation was illegal." *Id*. at 1116. The township's misrepresentations regarding the legality of the mulching operation were so pervasive that the landowners and township entered into multiple agreements regarding the use of the operations and even entered into a written memorandum of understanding. *Id*. at 1117. Thus, the trial court in the matter *sub judice* aptly described the township's misrepresentations in *Victory Gardens* as "extensive, continuous, and well-documented." Trial Court's Op. at 21.

Even if we concluded that the facts in *Victory Garden* bore *some* likeness to the present matter, we would still not be persuaded that Landowner bore his evidentiary burden. Initially, as indicated, we do not believe the Township misrepresented anything, whereas the township in *Victory Gardens* was patently wrong in its belief that mulching was permitted absent a variance. Nevertheless, Landowner's evidence of that "misrepresentation" pales in comparison to that of

14

*Victory Gardens*, *i.e.*, Landowner's uncorroborated testimony is not sufficiently clear, precise, or unequivocal, where the *Victory Gardens* township's litany of public assertions and written agreements were. For the same reasons, Landowner's testimony that he has done work for Township officials is less persuasive than any similar evidence proffered in *Victory Gardens*. Hence, we believe the trial court and ZHB correctly disposed of Landowner's equitable estoppel claim.[12]

Next, Landowner argues that the ZHB capriciously disregarded evidence of Officer Taylor's August 2020 letter. Landowner styles this argument as incidental to his equitable estoppel claim. *See* Brief of Appellant at 13. However, at times, Landowner departs from an equitable estoppel analysis to argue that the letter, as an unappealed non-conforming use determination, should preclude the Neighbors from challenging its determinations and the letter should likewise preclude the Township from enforcing the Notice. *Id*. at 14-17. Landowner thereby

---

[12] We therefore find Judge Ceisler's analysis of the case persuasive:

> Upon review, it is the Court's opinion that [Landowner] has failed to prove that he is likely to prevail on the merits of his appeal. The bar is set quite high to prevail on an equitable estoppel theory, and [Landowner] has several weak points in his argument. First, [Landowner] did not produce a witness or even the name of a Township official that he spoke to in 1988. Second, [Landowner] argues that he relied on the letter sent to the Smiths by [] Officer Taylor regarding allowable uses on the Property. However, information sent to *someone else* should not likely form the basis for an equitable estoppel argument. The Court recognizes that [Landowner] did operate the business for many years, and that certain people in the Township may have acquiesced in his use of the Property, but this is probably not enough to prove equitable estoppel, which "is an unusual remedy granted only in extraordinary circumstances." *Victory Gardens*, 224 A.3d at 1115.

*Linke*, slip op. at 8-9.

15

likens the instant matter to our Court's decision in *Falkler v. Lower Windsor Township Zoning Hearing Board*, 988 A.2d 764 (Pa. Cmwlth. 2010). *Id.*

In pertinent part, the Township questions whether Landowner properly preserved this argument for appellate review. Township's Brief at 22. In any case, the Township argues that, under a capricious disregard analysis, the ZHB's decision was supported by substantial evidence. *Id.* (*cf. Metal Green, Inc. v. City of Philadelphia Zoning Board of Adjustment*, 266 A.3d 495 (Pa. 2021)). The Township also posits that Officer Taylor's letter does not have a binding effect on whether violations of the Zoning Code existed on the Property over a year after the issuance of the letter to the Smiths. *Id.* at 6-11.

First, we observe that Landowner's arguments are only nominally related to the capricious disregard of evidence or to equitable estoppel. Relevant now, Landowner initially proffered Officer Taylor's August 2020 letter as evidence that his current use of the Property was a natural expansion of a pre-existing non-conforming use. ZHB's Adjudication at 10. Then, at the close of argument, Landowner made mention of the letter in support of his equitable estoppel claim. *Id.* at 12. Thereafter, having abandoned his natural expansion claim on appeal to the trial court, Landowner averred: "The [ZHB's] Decision is improper, an error of law, not supported by substantial evidence, an abuse of discretion and/or a capricious disregard of evidence in that Landowner properly established his right to operate and maintain his landscape contracting business on the Property **under the theory of equitable estoppel**." R.R. at 291a; Notice of Appeal to the Trial Court ¶32 (emphasis added). Based on Landowner's arguments to this Court, it appears Landowner is really seeking to resurrect his non-conforming use argument by way

16

of a theory that reads vaguely like collateral estoppel.[13]  However, because Landowner has styled his claim as a capricious disregard of evidence in the context of equitable estoppel, we will review it as such.

On that point, "[a] reviewing court may not disturb the findings of [the ZHB] if the record indicates the findings are supported by substantial evidence. Substantial evidence, in turn, means relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Metal Green*, 266 A.3d at 513 (citations omitted).  Additionally, we "allow for review of a [ZHB's] decision for a capricious disregard of the evidence as part of our traditional standard of review, in appropriate cases." *Id*. at 515.  "A capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence.  Capricious disregard of evidence is a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 814 (Pa. Cmwlth. 2005) (citing *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997 (Pa. Cmwlth. 2004)).  Nevertheless, we are mindful that "where substantial evidence of record supports a zoning board's findings, and the findings in turn support the board's conclusions, **it should remain a rare instance where a reviewing court disturbs an adjudication based on a**

---

[13] As the Township noted, Landowner is seeking to prevent enforcement of the Notice under the rationale that Officer Taylor's letter prevents any contrary determination regarding his use of the Property. *See* Township's Brief at 6-10.  Stated differently, Landowner is arguing that his use of the Property continues by right as a legally non-conforming use and any challenge to this determination is untimely.  This is inimical to the theory by which he seeks to prevent enforcement, however.  Equitable estoppel applies to otherwise illegal uses, *Victory Gardens*, 224 A.3d at 1116, not once legal uses. *Cf. Pietropaolo*, 979 A.2d at 976 (internal citation omitted) ("A lawful, non-conforming use of a property is a use predating a subsequent prohibitory zoning restriction.  The right to maintain a non-conforming use is only available for uses that were lawful when they came into existence and which existed when the ordinance took effect.").  Regardless, a review of the ZHB's Adjudication or the trial court's decision for capricious disregard of evidence cannot revive Landowner's abandoned claims.

**capricious disregard of the evidence standard**.” *Metal Green*, 266 A.3d at 515 (emphasis added).

Presently, while considering Landowner's equitable estoppel claim, the ZHB opined:

> In fact, the only possible evidence of any sort of misrepresentation would have been [Officer] Taylor's 2020 letter. In which case, there was no evidence presented that [Landowner] ever received this letter prior to the issuance of the [] Notice or that he relied upon this letter in anyway. As such, [Landowner's] arguments concerning equitable estoppel fail and such arguments have no impact upon the validity of the issuance of the [] Notice.

ZHB's Adjudication at 12. The ZHB's Adjudication clearly considered the value of the letter in relation to a primary element of equitable estoppel – whether Landowner could have relied on the purported misrepresentation to his detriment. Because the ZHB weighed the probative value of Officer Taylor's August 2020 letter in the context of Landowner's equitable estoppel claim, we cannot conclude that the instant matter is one such rare occasion where we may disturb the ZHB's adjudication based on this standard.[14]

---

[14] In any case, we are not persuaded by Landowner's reliance on *Falkler*. Therein, we determined that a neighbor's due process rights were not violated by dismissing his appeal of the grant of a certificate of non-conforming use to a landowner as untimely. *Falkler*, 988 A.2d at 765-70. Landowner relies on this case for the proposition that the Neighbors' failure to appeal Officer Taylor's 2020 letter must foreclose any challenge to his "non-conforming use determination" as similarly untimely. Brief of Appellant at 13-17.

All parties observe that the Township's Zoning Code provides for the registration of non-conforming uses. Article VI, §160-69 of the Township's Zoning Code, is available on the Township's website, and states:

**(Footnote continued on next page…)**

18

Thus, while it is regrettable that Landowner's businesses will likely suffer harm as a result of the Township's enforcement of the Notice, we do not believe that Landowner bore his evidentiary burden for the purposes of his equitable estoppel claim. Nor do we believe that the ZHB capriciously disregarded Officer Taylor's August 2020 letter in relation thereto.

Accordingly, the trial court's order is affirmed.


_____
MICHAEL H. WOJCIK, Judge

The Zoning Officer may provide for the registration of all uses which are non-conforming under the terms of this chapter within a reasonable time after the effective date of the chapter. The record of non-conforming uses shall certify, after inspection, the extent and kind of use and disposition of the buildings and land. Upon notification, each occupant or owner of a premises used for non-conforming use shall make available such information as may be necessary to determine the extent and nature of the non-conforming use.

https://ecode360.com/11181317#11181303 (last visited 12/17/24). Landowner asserts that Officer Taylor's 2020 letter noted "the extent and kind of use and disposition of the Property. The Zoning Officer then registered Landowner's landscape contracting business as a non-conforming use when he issued the Zoning Officer's Non-Conforming Use Determination." Brief of Appellant at 14. The Township argues that the 2020 letter cannot serve as a non-conforming use determination, because the record does not indicate that the use was actually registered and, thus, the process "envisioned" by the Township's Zoning Code was never followed. Township's Brief at 10.

These arguments are of no moment. Notwithstanding the lack of evidence regarding registration, *see* ZHB's Adjudication at 10, the ZHB assumed the existence of a non-conforming use on the Property. Thus, *Falkler* is not probative here, because, given that no registration or grant of a certificate of a non-conforming use exists, there is no challenge to the same. Indeed, neither the Township nor the Neighbors dispute the existence of a legally non-conforming nursery use; rather, the dispute pertains to the extent of the incidental landscape business use. Whatever the effect of Officer Taylor's August 2020 letter, it cannot preclude any challenge to Landowner exceeding the scope of his non-conforming use.

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas E. Linke,                              :
                                             :
                    Appellant                :
                                             :
          v.                                 : No. 863 C.D. 2023
                                             :
Hilltown Township Zoning Hearing             :
Board; Charles Smith and Donna               :
Smith; Joseph Monzo and Shannon              :
Monzo; William Crane and Nan Crane;          :
Kevin Craun; William and Penny               :
Jaxheimer; and Susan Bonino,                 :
individually and as the Hilltown             :
Neighbors Association                        :

# **O R D E R**

AND NOW, this 17th day of December, 2024, the July 25, 2023, Order of the Court of Common Pleas of Bucks County is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge